996 F.2d 1216
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Richard REEHER, Richard R. Snowden, Edward D. Gutta, Gilson
S. Schreiber, Plaintiffs-Appellants,
v.
BAKER MATERIAL HANDLING CORP., Defendant-Appellee.
 Nos. 92-3244, 92-3245, 92-3246 and 92-3256.
 United States Court of Appeals, Sixth Circuit.
 June 23, 1993.
 
 1
 Before: JONES and GUY, Circuit Judges; and COHN, District Judge.*
 
 
 2
 COHN, District Judge.
 
 I.
 
 3
 This is an employment discrimination/wrongful discharge case on appeal from the United States District Court for the Northern District of Ohio. Appellants, Richard Reeher (Reeher), Gilson Schrieber (Schrieber), Edward Gutta (Gutta), and Richard Snowden (Snowden), (collectively Appellants), brought separate actions against their former employer, Appellee, Baker Material Handling Corporation (BMHC or Baker). Appellants, each represented by the same counsel, filed substantially similar actions alleging age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 620, et. seq., state law claims of age discrimination under O.R.C. §§ 4101.17, 4117, breach of contract and promissory estoppel for failure to pay severance benefits, and intentional and/or negligent infliction of emotional distress.[1] BMHC filed motions for summary judgment in each case. The actions were referred to a magistrate judge (MJ) to hear the motions for summary judgment. In separate memorandum opinions, the MJ concluded that (1) the Appellants failed to establish a prima facie case of age discrimination and, even if a prima facie showing had been made, BMHC had articulated a legitimate nondiscriminatory reason (economic necessity) which was not rebutted, and (2) the state contract claims were preempted by ERISA. The MJ granted BMHC's motions for summary judgment. This consolidated appeal followed.[2] For the reasons that follow, we affirm.
 
 II.
 
 4
 BMHC is an Ohio corporation which manufactures industrial lift trucks. Prior to 1977, BMHC operated two facilities in Cleveland: (1) Tiedeman Road (Tiedeman), which manufactured standardized trucks using an assembly line process, and, (2) Taft Avenue (Taft), which manufactured customized trucks for specific customers. In 1977, BMHC was acquired by Linde AG (Linde), a German company, which also manufactured industrial lift trucks. After the acquisition of BMHC, Linde manufactured component parts for standardized trucks in Germany and assembled them at the Cleveland facilities.
 
 
 5
 In 1984, BMHC built a new plant in Summerville, South Carolina (Summerville) for the assembly of the standardized trucks. The Summerville plant was located near the port of Charleston, South Carolina, through which the component parts where shipped from Germany.
 
 
 6
 When Summerville became operational in 1985, Tiedeman was closed. The majority of the employees at that facility were terminated. Some non-union employees were offered transfers to Summerville and others were transferred to Taft.
 
 
 7
 After Summerville opened, BMHC had several reductions in its work force, effecting both Summerville and Taft. In 1986, 12 employees were terminated. In 1987, BMHC terminated a total of 27 employees, with 16 of them being terminated during November. BMHC eventually discontinued the manufacture of custom industrial lift trucks and closed Taft in 1990.
 
 III.
 Age Discrimination
 A.
 
 8
 It is well settled that claims of age discrimination under the ADEA are analyzed under the standard employed in Title VII cases as announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and restated in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981):
 
 
 9
 First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." [Green at 802]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
 
 
 10
 While the burden of production shifts to the defendant upon the showing of a prima facie case, the burden of persuasion remains, at all times, with the plaintiff. Id.
 
 
 11
 A plaintiff carries the initial burden of demonstrating by a preponderance of the evidence a prima facie case of age discrimination:
 
 
 12
 (1) he was a member of a protected class (age 40 to 70);
 
 
 13
 (2) he was subject to adverse employment action;
 
 
 14
 (3) he was qualified for the position; and,
 
 
 15
 (4) he was replaced by a younger person.
 
 
 16
 McDonald v. Union Camp Corp., 898 F.2d 1155, 1159-60 (6th Cir.1990) (citing Simpson v. Midland-Ross Corp., 823 F.2d 937, 940 (6th Cir.1987)). In cases involving work force reduction, the prima facie showing is altered, omitting the fourth element for the reason that an employee terminated in a reduction in force is not replaced. Barnes v. GenCorp, Inc., 896 F.2d 1457, 1465 (6th Cir.1990). A plaintiff in such circumstances must, however, make an additional showing:
 
 
 17
 By showing the other elements of a McDonnell Douglas case, a plaintiff has not presented any evidence indicating that the work force reductions are not the reasons for the discharge and therefore does not make out a prima facie case absent additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.
 
 
 18
 Id.
 
 B.
 Reeher & Schrieber
 1.
 
 19
 Reeher began working at BMHC in 1959. When Tiedeman closed, Reeher was transferred to Taft and assigned to work on a modification to a new German import. After that project was completed, Reeher was assigned to "cleaning up" the drawings for an explosion proof truck that BMHC had been manufacturing for several years. Reeher's employment was terminated in November 1987, at which time he was 59 years old.
 
 
 20
 Schrieber worked at BMHC between 1955 and 1962, before voluntarily resigning. Schrieber was rehired in 1977 as a senior designer at Tiedeman. When Tiedeman closed, Schrieber was transferred to Taft and assigned to work on a truck identified as CBRFD 30. When this project was completed, Schrieber was assigned to work on two new custom trucks, designated CBRFD 50 and CBRFD 60 until those projects were discontinued. Schrieber's employment was terminated in November 1987, at which time he was 58 years old.
 
 
 21
 It is not disputed that Reeher and Schrieber are members of the protected class, qualified for the positions they held and subject to an adverse employment action. The initial question is whether the fourth element of the prima facie showing is required and, if so, whether they established that element.
 
 2.
 
 22
 In their claims below and in this appeal, Reeher and Schrieber maintain that a true reduction in force did not occur, but rather that they replaced by new and younger employees. Reeher and Schrieber assert that the traditional McDonnell Douglas prima facie showing applies to their claims and they assign error the MJ's determination that they failed to establish that they were replaced by younger employees. Reeher and Schrieber stated, in affidavits, that after their terminations BMHC advertised for and hired two mechanical engineers, both under age 40, to work at Taft. Reeher and Schrieber also proffered an affidavit of Gutta to the same effect and an affidavit of Alvin Bednarski (Bednarski), a former BMHC employee, in which he stated that two men were hired into the Taft engineering department to replace Reeher and Schrieber.
 
 
 23
 BMHC responds that Reeher and Schrieber were terminated in a work force reduction. BMHC asserts that when Tiedeman was closed, four designers transferred to Taft: Reeher, Schrieber, Larry Flick (Flick) and Ed Zeeck (Zeeck). Two designers also transferred to Taft when Tiedeman closed. Flick died in 1987. In November 1987, BMHC's Vice-President for Engineering, Ralph Bernatos (Bernatos) terminated Reeher and Schrieber and retained Zeeck. BMHC asserts that Zeeck was retained because he was better qualified in relation to BMHC's needs at Taft; Unlike either Reeher or Schrieber, Zeeck was an electrical designer and had managed the custom department and the testing lab at Tiedeman.
 
 3.
 
 24
 a.
 
 
 25
 Assuming, as Reeher and Schrieber assert, that no reduction in force occurred, the court below correctly concluded that they failed to establish the fourth element of the prima facie case. In the opinion granting BMHC's motions for summary judgment on the age discrimination claim of Reeher, the MJ stated:
 
 
 26
 Next, there is the representation that there were two individuals hired after the plaintiff was discharged. The only evidence before the court in such regard are the conclusory statements to that effect by the plaintiff and Messrs. Bednarski and Gutta. Neither the plaintiff nor Mr. Gutta explain how they came to have such information as to the events transpiring after they left Baker. The alleged advertisement which resulted in those hires has not been brought forward. Most critically, more than four years after the hires were supposed to have taken place, and more than three years after suit was filed and plaintiff had recourse to discovery under the Federal Rules of Civil Procedure, those two men remain nameless and faceless, amorphous entities floating in an ethereal world of lost souls. [footnote 5] Such totally conclusory statements are insufficient to withstand a properly supported motion for summary judgment, McDonald, 898 F.2d at 1162.
 
 
 27
 Assuming for the sake of argument that there were two hires, it would appear from the generalized statements of the plaintiff and Mr. Gutta that those individuals were engineers, not designers. Therefore, on the face of the matter it would not appear that they were replacements for the plaintiff, who was a designer, not an engineer. As they remain unidentified, there is no evidence in this record as to the background and skills [footnote 6] and/or the jobs allegedly performed for Baker by the two mystery men. Consequently, the conclusory statements of Mr. Bednarski that the two hires did the same work that the plaintiff had performed would be totally inadequate to raise a genuine issue of material fact as to whether the plaintiff was replaced by a new employee under age forty.
 
 
 28
 Footnote 5: For all this Court knows from plaintiff's proofs, those two individuals could have been the Canterville ghost and Casper, the friendly ghost.
 
 
 29
 Footnote 6: For all the Court knows, if the two men actually existed and were hired they could have had the capabilities of Oppenheimer and Teller, fathers of the atomic era, or Penn and Teller, comedic stage magicians.
 
 
 30
 Memorandum Opinion of January 31, 1992 at pages 20-22. The MJ made identical statements in granting BMHC's motion for summary judgment on Schrieber's claim of age discrimination. See Memorandum Opinion of January 24, 1992 at pages 21-22.
 
 
 31
 b.
 
 
 32
 Reeher and Schrieber assert on appeal that the MJ failed to properly apply the standards for summary judgment. Reeher and Schrieber do not, however, point to any evidence in the record, other than their conclusory affidavits and those of Gutta and Bednarski, that BMHC advertised for new employees or hired any employees after the November 1987 lay-offs, nor do they point to any evidence in the record that identifies the ages or qualifications of the two employees that were allegedly hired to replace them.
 
 
 33
 c.
 
 
 34
 Conclusory statements that younger employees were hired to replaced Reeher and Schrieber are not sufficient to identify genuine issues of material fact precluding summary judgment. In the absence of corroborating material, such a personnel records or deposition testimony available during discovery, the MJ properly concluded that Reeher and Schrieber failed to meet their initial burden of establishing a prima facie case.
 
 4.
 
 35
 Assuming that the modified standard for work force reduction cases were applied here, Reeher and Schrieber failed to advance "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." Barnes, 896 F.2d at 1465. Reeher and Schrieber rely on the assertion that they were "blacklisted" because their termination papers indicated that they were not eligible for rehire. The deposition testimony of the responsible personnel officer of BMHC states that the indication that they were ineligible was an error. Even assuming that the ineligibility was intentional, not an error, Reeher and Schrieber have not identified the manner in which this ineligibility is indicative of a discriminatory motive, nor have they proffered any direct or statistical evidence that they were singled out. Accordingly, summary judgment was appropriately granted to BMHC on the claims of age discrimination by Reeher and Schrieber.
 
 5.
 
 36
 BMHC asserts that, even assuming that Reeher and Schrieber had established a prima facie case of age discrimination, BMHC had articulated a legitimate, nondiscriminatory reason for their terminations: work force reduction. In their reply briefs before this Court, Reeher and Schrieber assert that the articulated reason of reduction in force is not credible because BMHC has not denied the assertion that two new hires were made to replace Reeher and Schrieber.
 
 
 37
 The argument here offered by Reeher and Schrieber invites a misapplication of the McDonnell Douglas approach, suggesting that the defendant employer, in order to meet its burden of production, must establish the negative and disprove a conclusory allegation made by a plaintiff. The reply of Reeher and Schrieber serves only to reinforce the determination above that the elements of the prima facie case have not been established.
 
 C.
 Gutta
 1.
 
 38
 Gutta began working at BMHC in 1955 as a designer. Gutta earned an engineering degree and was eventually promoted to senior project engineer before leaving BMHC in 1965. Gutta returned to BMHC as a supervisor in 1967 and later became the manager of development engineering at Tiedeman. Gutta was asked, but not required, to transfer to Summerville, where he would have joined the corporate engineering department. Gutta declined transfer to Summerville and was transferred to Taft when Tiedeman closed. At Taft, Gutta continued to work on the standardized truck line. Since the physical production of standardized trucks had been transferred to Summerville, Gutta conducted his work by telephone or travelling to Summerville. Also during this period, Gutta represented BMHC at the Industrial Truck Association and the American National Standards Institute and assisted on product liability cases. Gutta's employment was terminated in November 1987, at which time he was 61 years old.
 
 
 39
 The dispositive question is whether Gutta carried his burden of establishing a prima facie case of age discrimination. It is not disputed that Gutta is a member of the protected class, qualified for the position he held and subject to an adverse employment action. Gutta's age discrimination claim rests on the allegation that he was replaced by Manfred L. Baumann (Baumann), a 44 year old German national.
 
 2.
 
 40
 BMHC moved for summary judgment on the ground that Gutta failed to establish a prima facie case of age discrimination because he was not replaced and, consequently, could not have been replaced by a younger person. In support of its motion, BMHC offered the affidavit BMHC's Vice-President for Engineering, Ralph Bernatos (Bernatos), which states in relevant part:
 
 
 41
 8. The head of engineering design and production of the customized trucks at Taft Avenue was Al Bednarski, whose date of birth is March 1, 1925. Bednarski had over 25 years of experience and knowledge in the production of customized trucks at Taft Avenue. Although Gutta could perform certain engineering functions for the production of customized trucks, he was not nearly as vital to the Taft Avenue operation as was Bednarski.
 
 
 42
 9. When the November 1987 layoff became inevitable, I had to choose between my two engineering managers, Gutta and Bednarski. I chose to retain Bednarski instead of Gutta because the Taft Avenue plant could not function without Bednarski, whereas both Baker facilities could be run without Gutta.
 
 
 43
 BMHC also offered an affidavit of Baumann in which he stated that he assumed some of the duties previously performed by Gutta, but that those duties account for only a fraction of his job responsibilities.[3]
 
 3.
 
 44
 In response to the motion, Gutta presented three items of documentary evidence. The first document was an announcement by Bernatos dated June 24, 1985 which stated, in relevant part: "Effective July 1, 1986, Mr. Edward B. Gutta is promoted to the newly formed position of Chief Engineer. In this new responsibility, he will oversee both the Baker and Moto-Truc engineering staffs." Gutta also offered a copy of his BMHC business card, which indicates his title as "Manager of Engineering." The third document is an "Organizational Announcement" by Manfred D. Haiderer (Haiderer), President of BMHC, dated June 19, 1987, which states in relevant part: "I am pleased to announce that Mr. Manfred Baumann has joined Baker Material Handling as Manager of Engineering, effective June 1, 1987.... Mr. Baumann will be responsible for the engineering of all Baker products and will report to Mr. Juergen Behrens in the interim, and later to me directly."
 
 
 45
 Gutta also offers his affidavit, which states in relevant part:
 
 
 46
 69. As Manager of Engineering (Chief Engineer), I had 3 groups reporting to me.
 
 
 47
 70. We had a central engineering group which included a test laboratory, a custom design group at Taft, and a custom design group at Summerville.
 
 
 48
 71. The central engineering group designed new series trucks, assemblies, and components for both Taft and Summerville and distributed the information along with information about the imported trucks and components throughout the BAKER organization. They were also responsible for selecting or approving the use of standard components and assemblies on special trucks for most of the testing and for responding to field problems involving series trucks and components.
 
 
 49
 72. It was my responsibility to resolve design problems and service failures of Linde trucks or components by interfacing with the engineers in Germany.
 
 
 50
 Gutta also offered the affidavit of Bednarski, which states in relevant part:
 
 
 51
 5. Edward D. Gutta was the Manager of Engineering, until he was replaced by Manfred Baumann. The only differences between Manfred and Ed were that Gutta functioned as Manager of Engineering with his office in Cleveland, while communicating by phone and commuting to Summerville, South Carolina when necessary, he was older and more knowledgeable [sic] of our Engineering operations, and he was an American. Baumann functioned as Manager of Engineering with his office in Summerville, while communicating by phone and commuting to Cleveland, when necessary, he was younger and less knowledgeable [sic] of our Engineering operations, and he was a German National.
 
 
 52
 * * *
 
 
 53
 * * *
 
 
 54
 7. When Edward Gutta was terminated from BAKER I did not take over his work or do any part of his previous job. For anyone to say otherwise is a blatant falsehood. I am not a Professional Engineer. To the best of my knowledge and belief all duties of Gutta transferred along with his title to Manfred Baumann.
 
 4.
 
 55
 The MJ found that Gutta failed to establish that he had been replaced by Baumann. The MJ stated:
 
 
 56
 This Court finds that the affidavits of Messrs. Bernatos and Baumann are not sufficiently disputed by the affidavit of Mr. Bednarski or by the plaintiff's documentary evidence, to raise a genuine issue of material fact. As the plaintiff does not challenge defendant's assertion that in 1986 and 1987 Baker was encountering business problems, which resulted in layoffs at several points in time in both Cleveland and Summerville, the survival of his discrimination claims depends on here being a genuine issue of material fact as to whether he was replaced by Mr. Baumann.
 
 
 57
 In that regard, the plaintiff's self-serving declaration, supported by his associate Mr. Bednarski, that he was better qualified than Mr. Baumann not only does not find support in the record, but is irrelevant in light of Mr. Baumann's undisputed (except by the most conclusory and vague statement by Mr. Bednarski), sworn statement that he assumed duties previously performed by Gutta in addition to the duties he had been performing since June 1, 1987, and that Gutta's previous duties account for only five to ten percent of his duties. The evidence of the titles carried by Mr. Baumann and the plaintiff is unconvincing at best, in light of the fact that the title "Manager of Engineering" was apparently not an exclusive title. Mr. Bernatos' affidavit refers to Mr. Bednarski as an engineering manager, and yet there is no claim by the plaintiff that, looking to the titles held by each, Mr. Bednarski took over his position. This Court finds that Gutta has failed to demonstrate the existence of a genuine issue of fact regarding whether he was replaced by Mr. Baumann, and that, under the Sixth Circuit precedents set out herein, Mr. Baumann cannot be considered as having done so.
 
 
 58
 Memorandum Opinion of January 29, 1992 at pages 20-21
 
 5.
 
 59
 The initial burden rests with Gutta to establish the elements of a prima facie case. In this instance, Gutta has failed to meet that burden.
 
 
 60
 Gutta's proffer of documentary evidence does not materially support the claim that he was replaced by Baumann because that evidence is limited to an ineffective effort to equate replacement with job titles.[4] Even to the extent that similarity in job titles is indicative of replacement, it must be noted that the internal announcements identified Gutta as "Chief Engineer" and Baumann as "Manager of Engineer." The only similarity is based on the business card offered by Gutta, without indication of the authority on which that title was included on the card or when. Conversely, however, a difference in title would not establish that replacement had not occurred.
 
 
 61
 Given the number of changes in job duties and assignments occurring at BMHC during the relevant period, a showing that Gutta was replaced by Baumann turns on the job responsibilities and functions performed by each. In that regard, Gutta has failed to establish that Baumann replaced him. While the Gutta affidavit summarizes the job responsibilities that he held prior to termination, Gutta has not adduced evidence to establish that those functions were transferred to Baumann in such manner as to support a conclusion that he was replaced by Baumann. The proffer of the Bednarski affidavit is not supportive. Notwithstanding the conclusory nature of the statements in the Bednarski affidavit, taken at its best the affidavit asserts that Gutta's duties were not transferred to Bednarski. It does not establish in any fashion that Gutta's duties were transferred to Baumann.
 
 
 62
 The documentary and testimonial evidence offered by Gutta in response to the motion for summary judgment does not identify any genuine issue of material fact tending to show that he was replaced by Baumann. Summary judgment was appropriately granted.
 
 D.
 Snowden
 1.
 
 63
 Snowden began working at BMHC in 1956. At the time of his termination, Snowden was a field service manager with responsibility for providing service, training and maintenance for BMHC customers in his designated region. There were four other field service managers: Dave Loudin (Loudin), Chuck See (See), Ron Chitwood (Chitwood), and Bob Fernandez (Fernandez). The field service managers were supervised by the Service Manager, Donald Evans (Evans). Snowden's employment was terminated in November 1987. At that time, Snowden, age 61 and Loudin, age 39, were terminated by Evans and the field service regions consolidated into three regions managed by See, Chitwood and Fernandez.
 
 
 64
 The dispositive question is whether Snowden carried his burden of establishing a prima facie case of age discrimination. It is not disputed that Snowden is a member of the protected class, qualified for the position he held and subject to an adverse employment action. Snowden's age discrimination claim rests on the allegation that he was replaced by one or more younger employees.
 
 2.
 
 65
 BMHC moved for summary judgment on the ground that Snowden failed to establish a prima facie case of age discrimination because he was not replaced and, consequently, could not have been replaced by a younger person. BMHC relies on Barnes v. GenCorp, Inc., 896 F.2d at 1465, where this Court stated:
 
 
 66
 [A] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.
 
 
 67
 BMHC asserts that Snowden's duties were redistributed to the three remaining field service managers and, therefore, Snowden was not replaced and, consequently, Snowden has not established the elements of a prima facie case.
 
 3.
 
 68
 Snowden asserts that, after his termination, BMHC advertised for a "Field Service Technician" to replace him and that this new position was filled by a younger employee. In his appeal brief, Snowden asserts:
 
 
 69
 They did not eliminate Plaintiff's work. They, in affect, got a replacement. They eliminated one position by letting the least experienced employee, Loudin go. They then advertised for a "new" person to replace Snowden, during the time that litigation was proceeding. When this was brought to their attention, they decided to hire a person to do warranty work normally done by the service managers so that the service managers could do the rest of their jobs.
 
 
 70
 BAKER, before "restructuring", had Snowden, Chitwood, See and Fernandez to do the work of the Field Service Managers, when they got done they still had four persons to do the work of the Field Service Managers, but they got rid of their oldest person.
 
 4.
 
 71
 The MJ found that Snowden failed to establish a prima facie case of age discrimination. The MJ stated:
 
 
 72
 In the face of this clear evidence that Baker was encountering financial difficulties requiring a restructuring of its work force and that the plaintiff's termination was by reason of reduction in force, plaintiff offers virtually nothing more than the argument that he was better qualified than those who were retained and/or that he was in fact replaced by one of two possible people.
 
 
 73
 As to the plaintiff's allegedly superior qualifications, the plaintiff suggests that he was better qualified than the three representatives who were retained, while at the same time arguing, in the alternative, that he would have been better qualified had he received additional training. In this Court's opinion, neither of these arguments has force in view of the defendant's demonstration that, in the judgment of Donald Evans, the man charged with the unpleasant responsibility of deciding who was to be terminated, the plaintiff was less qualified to deal with the changing nature of his position than were other field service representatives. Even if Mr. Evans was incorrect in his conclusion that the plaintiff was less qualified than the others (and there is no evidence that such was the case), there is no evidence that that was not his true opinion. It is not the function of this Court to second guess the legitimate business decisions of a defendant company.
 
 
 74
 With respect to the plaintiff's claim that he was replaced, his evidence falls woefully short of demonstrating a genuine issue of material fact. It is undisputed that after Snowden was terminated Baker advertised for a "Field Service Technician." It is not, however, clear that that position was to be the same as the one the plaintiff held before dismissal, or that the defendant sought to fill the position with someone younger than the plaintiff. More importantly, the fact is that the plaintiff has presented no evidence that anyone was hired to fill that position, and, from this record, it does not appear that there was such a new hire. Therefore, on this record, this Court must conclude that Snowden simply was not replaced by a new hire.
 
 
 75
 The plaintiff's assertion that he was replaced by Mr. Zukowski is likewise deficient. This record establishes, and the plaintiff concedes, that Mr. Zukowski took over handling the warranty claims for all field services representatives. The warranty claims had previously been handled by each representative as a part of his job duties.
 
 
 76
 As reflected in the decisions previously set out herein, it is well established in this circuit that the fact that a terminated employee's job duties were assigned to another, or distributed among others, to be performed along with additional responsibilities carried by the other(s) does not constitute replacement of the terminated employee by the other(s), and that is true even if the other(s) first became employed following the employee's termination. Barnes, 896 F.2d at 1466. Therefore, the hiring of Mr. Zukowski is insufficient to create a genuine issue of material fact as to whether the plaintiff was replaced by a younger person, as the term "replaced" is interpreted for purposes of actions under the ADEA.
 
 
 77
 Memorandum Opinion of January 31, 1992 at pages 16-18
 
 5.
 
 78
 The MJ's consideration of the comparative qualifications arguments raised by Snowden was, at best, premature. It does not appear disputed for the purposes of establishing the prima facie case that Snowden was qualified for the position that held prior to his termination. Whether his selection for termination while others were retained, when viewed in light his assertedly superior qualifications, was actually based on a discriminatory objective or the proffered reason for his termination is not deserving credence are matters to be inquired into only if Snowden succeeded in establishing a prima facie case.
 
 
 79
 The MJ correctly concluded that Snowden failed to establish the fourth element of the prima facie case--replacement by a younger employee. Snowden's proffer is limited to conclusory assertions that are insufficient to identify a genuine issue of material fact as to whether he was replaced by a younger employee. Snowden does not present the advertisement or a description of the position advertised and does not present evidence that there was a new hire to fill the advertised position or that such hire, if it occurred, was a younger employee. There is no proffer by Snowden that shows other than that his job duties were "redistributed among other existing employees already performing related work." Barnes, 896 F.2d at 1465.
 
 
 80
 Snowden's response to the motion for summary judgment does not identify any genuine issue of material fact as to whether he was replaced. Summary judgment was appropriately granted.
 
 IV.
 National Origin Discrimination
 A.
 
 81
 Claims of national origin discrimination under Title VII, 42 U.S.C. § 2000e, et. seq, are analyzed under the McDonnell Douglas standard described supra. The plaintiff bears the initial burden of establishing a prima facie case, that: (1) he is member of a protected class, (2) he was qualified for the position, (3) he was subject to an adverse employment action, and (4) he was replaced by a person not of the protected class. See Shah v. General Electric Co., 816 F.2d 264 (6th Cir.1987).
 
 B.
 
 82
 Gutta asserted that the termination of his employment at BMHC was in violation of the Title VII prohibition against national origin discrimination in employment. It is not disputed that the first three elements of the prima facie case are present. However, Gutta is obliged to establish the fourth element, in this instance, that he was replaced by Baumann.
 
 
 83
 As discussed supra, Gutta has failed to identify any genuine issue of material fact that would tend to support the allegation that he was replaced by Baumann. The motion for summary judgment was also appropriately granted as to Gutta's claim of national origin discrimination.
 
 V.
 Severance Pay
 A.
 
 84
 Each of the Appellants asserted a state law claim of breach of contract and promissory estoppel premised on allegations that BMHC wrongfully failed to pay severance benefits. The complaint in each case was virtually identical and stated as follows:
 
 
 85
 26. BAKER had a policy reiterated many times and known to the employees of paying one weeks [sic] severance pay for each year of service and a fractional portion for a fraction of a year.
 
 
 86
 27. BAKER promised its employees that if they were fired as a result of Defendant's relocation, BAKER would guarantee severance pay equal to one week of pay for each year of service. A copy of said written policy is attached as and made part hereof as Exhibit "A".
 
 
 87
 28. The aforesaid policy was stated to BAKER's employees to entice them to forego other job opportunities and remain in BAKER's employ.
 
 
 88
 29. Plaintiff relied on the representations and promises contained in the aforesaid written policy statement, verbal representations made, and established practice known to employees to his detriment, and remained in BAKER's employ, foregoing other job opportunities.
 
 
 89
 30. At the time of his termination, under the terms of the aforesaid policy, Plaintiff was entitled to severance pay equal to [See below].
 
 
 90
 31. Plaintiff did not receive the aforesaid severance pay on his dismissal such that Plaintiff suffered and continues to suffer losses and damages contrary to BAKER's severance policy.
 
 
 91
 Appended as an exhibit to each complaint was a letter issued by then president of BMHC, John Rasmussen (Rasmussen), dated April 23, 1984 (Rasmussen letter), which states in relevant part:
 
 
 92
 Also, if the Company moves away from Cleveland and you should lose your job because of such a move, the Company guarantees you severance pay equal to one week's pay for each year of service. (emphasis in the original)
 
 
 93
 The amounts of severance pay claimed by each of the Appellants in their respective complaints is as follows:
 
 
 94
 Reeher Twenty eight and seven twelfths (28.58) weeks
 
 
 95
 Schrieber Seventeen and one twelfth (17.083) weeks
 
 
 96
 Gutta Thirty two and one half (32 1/2) weeks
 
 Snowden Thirty two (32) weeks
 B.
 
 97
 BMHC asserted that the state law claims for severance pay are preempted by ERISA and moved for summary judgment on the ground that Appellants each received severance pay in accordance with the policy in effect at the time of their terminations. Rather than the Rasmussen letter, BMHC relies on a memorandum dated September 30, 1987, issued by then BMHC president Manfred Haiderer (Haiderer) and addressed to all employees of the Summerville and Cleveland Divisions. The Haiderer memorandum states, in its entirety:
 
 
 98
 Effective immediately, the Severance Pay Policy for Baker Material Handling Corporation, will be paid as follows:
 
 
 99
 Years of Service Week(s)
 
 
 100
 Less than 3 months 0
 
 
 101
 3 months to 1 year 1
 
 
 102
 1 to 3 years 2
 
 
 103
 3 to 5 years 3
 
 
 104
 5 to 8 years 4
 
 
 105
 8 to 12 years 5
 
 
 106
 12 to 15 years 6
 
 
 107
 15 to 20 years 7
 
 
 108
 Over 20 years 8
 
 
 109
 This new policy supersedes any previous communications, whether verbal or written.
 
 
 110
 BMHC asserts that the policy described in the Haiderer memorandum determined the rights and obligations of the parties at the time of the terminations and that each of the Appellants was paid according to the schedule.
 
 C.
 
 111
 The MJ found that "the plan at issue in this case is a welfare benefit plan within the meaning of ERISA," rejecting Appellants contention that the benefits sought were deferred compensation outside the scope of ERISA. The MJ reasoned that BMHC was within its rights under ERISA to modify the severance pay policy and that the terms of the Haiderer memorandum were controlling. The MJ went on to find that the breach of contract and promissory estoppel claims were preempted by ERISA, concluding that summary judgment for BMHC was appropriate.
 
 D.
 1.
 
 112
 Before discussing the rationale employed below, it is deserving of mention that BMHC argued, in the first instance, that the Rasmussen letter was not a statement of policy applicable to salaried employees, but rather was marked "Salaried Personnel: For Your Information" and contained BMHC's proposal to the union employees on severance pay and other matters. Indeed, other than the paragraph excerpted by Appellants, each paragraph of the letter addresses union and unionized employee matters. The Rasmussen letter, when viewed in its entirety, cannot reasonably be interpreted as a statement of policy directed to salaried employees, such as Appellants. Inasmuch as no other policy statement or plan description prior to the Haiderer memorandum is presented by Appellant, the record supports a conclusion that the Haiderer memorandum is not a modification of an existing plan, but the establishment of a severance pay plan. Whether the Rasmussen letter created a plan applicable to the Appellants is ultimately of no consequence, however, since BMHC was within its rights to replace the benefits described in the Rasmussen letter with the scheduled benefits of the Haiderer memorandum. Adams v. Avondale Industries Inc., 905 F.2d 943 (6th Cir.1990), cert. denied, 111 S.Ct. 517 (1990) (failure to expressly reserve the right to modify or amend a severance pay plan does not render the plan unamendable by sole reason of noncompliance with 29 U.S.C. § 1102(b)). See also Gordon v. Barnes Pumps, Inc., No. 92-3216 --- F.2d ---- (6th Cir.1993); Musto v. American General Corp., 861 F.2d 897 (6th Cir.1988), cert. denied, 490 U.S. 1020 (1989).
 
 2.
 
 113
 Appellants assertion that the benefits at issue are deferred compensation outside the scope of ERISA is without merit and was properly rejected by the court below. There is no indication, whatsoever, that the benefits at issue here are or could be anything other than severance pay--an additional amount payable upon termination of employment and based on length of service. There is no basis for characterizing these benefits as deferred compensation--a portion of the employee's present compensation the payment of which is deferred to a later date--save that Appellants seek to avoid the preemptive effect of ERISA.[5]
 
 3.
 
 114
 It is well settled that severance pay plans are welfare benefit plans subject to ERISA. Adams v. Avondale Industries Inc., 905 F.2d at 947. Appellants' breach of contract and promissory estoppel claims are not "remote or peripheral" with respect to the ERISA plan, Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1276 (6th Cir.1991), but rather are claims "for the recovery of an ERISA plan benefit." Id. Accordingly, the claims of breach of contract and promissory estoppel are preempted by ERISA. Id. Inasmuch as there is no dispute that severance benefits were paid to the Appellants in accordance with the schedule contained in the Haiderer memorandum, the MJ properly concluded that BMHC was entitled to summary judgment.
 
 VI.
 Sanctions
 
 115
 The district court awarded costs to BMHC as a sanction for misconduct by Appellants' counsel in connection with the deposition of BMHC employees. Appellants raise the discovery sanction as an issue in this appeal, but elect to merely direct this Court's attention to the motion papers filed before the district court relating to the deposition over which a dispute arose and sanctions were imposed.
 
 
 116
 The district court has broad discretion to manage the cases before it and to award discovery sanctions when it deems them appropriate. Lewelling v. Farmers Insurance of Columbus, Inc., 879 F.2d 212, 218 (6th Cir.1989). An award of discovery sanctions is subject only to an abuse of discretion review by this Court. Id. Appellants do not endeavor to identify an abuse of discretion by the district court, but simply lodge their discontent. Accordingly, the district court's exercise of discretion in this regard will not be disturbed.
 
 VII.
 
 117
 For the reasons stated, the determinations below are AFFIRMED.
 
 
 
 *
 Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Gutta also asserted a claim of national origin discrimination under Title VII, 42 U.S.C. § 2000e, et. seq
 
 
 [2]
 Appellants' do not appeal the dismissal of their claims of intentional and/or negligent infliction of emotional distress
 
 
 [3]
 The text of the Baumann affidavit does not appear in the appellate record
 
 
 [4]
 The Court is disturbed by the MJ's reference to the documentary evidence as "unconvincing," insofar as such language suggests a weighing of the evidence rather than an inquiry into whether the proffer identifies a genuine issue of material fact. The Court is satisfied, however, that this is merely a poor choice of words
 
 
 [5]
 The Court observes without deciding that there is little value to recasting the benefits as deferred compensation, as a deferred compensation plan may also be subject to ERISA