Bill LEWELLING, et al.,
Plaintiffs–Appellants,

v.

FARMERS INSURANCE OF
COLUMBUS, INC., et al.,
Defendants–Appellees.

No. 88–3025.

United States Court of Appeals,
Sixth Circuit.

Argued May 15, 1989.

Decided July 10, 1989.

Melvin D. Weinstein (argued), Shelby M. Steger, John C. McDonald, Emens, Hurd, Kegler & Ritter, Columbus, Ohio, for Farmers Ins. of Columbus, Inc.

Melvin D. Weinstein (argued), Emens, Hurd, Kegler & Ritter, Columbus, Ohio, for The Ohio State Life Ins. Co., Farmers Ins. Exchange, Truck Ins. Exchange, Fire Ins. Exchange, Mid–Century Ins. Co. and Farmers Ins. Co.

Louis G. Fazzi (argued), Fazzi & Fazzi, Rancho Cucamonga, Cal., Donald J. Parrish, Ventura, Cal., for Bill Lewelling, Steve Petrillo, Donald Huddleston and Roy White.

Before MARTIN and MILBURN, Circuit Judges, and PECK, Senior Circuit Judge.

MILBURN, Circuit Judge.

Plaintiffs-appellants Bill Lewelling, Steve Petrillo, Don Huddleston, and Roy White (collectively, "plaintiffs") appeal the summary judgment of the district court in favor of defendants-appellees Farmers Insurance of Columbus, Inc., Ohio State Life Insurance Company, Farmers Insurance Exchange, and Mid–Century Insurance Company (collectively, "Farmers") on plaintiffs' claims against Farmers for breach of contract and fraud. For the reasons that follow, we affirm.

I.

A.

The present action was commenced on August 23, 1983, when Farmers filed a complaint against Lewelling in the Common Pleas Court in Franklin County, Ohio. Farmers sought repayment from Lewelling for monies Farmers had paid him while he was a district manager for Farmers in Ohio. Lewelling removed this action to the United States District Court for the Southern District of Ohio on October 14, 1983, based on diversity of citizenship. Lewelling alleged that he is a resident of Oklahoma and that Farmers is incorporated and has its principal place of business in both California and Ohio.

Meanwhile, on October 6, 1983, Lewelling, along with plaintiffs Petrillo, Huddleston, and White (and two other plaintiffs who have since dismissed their claims) filed an action against Farmers in the United States District Court for the Central District of California. Plaintiff's complaint contained two counts. Count I alleged that plaintiffs had been agents and district managers for Farmers in states other than Ohio and that around October 1, 1979, Farmers made oral promises to plaintiffs to induce them to become district managers for Farmers in Ohio. Count I further alleged that all four plaintiffs decided to move to Ohio and become district managers

in reliance upon these promises, and that plaintiffs all began serving as district managers in Ohio following Farmers' commencement of operations in that state. Plaintiffs alleged that these promises made to them were not true and that Farmers failed to perform the matters that it had promised in breach of its oral promises.

Count II alleged a cause of action for promissory fraud based upon the same facts relied upon in Count I. Plaintiffs alleged in Count II that they were induced, encouraged, and coerced by Farmers into moving to Ohio to establish district managerial areas as a result of a scheme between the individual companies comprising Farmers. Plaintiffs further alleged that Farmers intended to defraud them and to induce them falsely and fraudulently to terminate their previous employment with Farmers in other states and to move to Ohio and become district managers for Farmers in a new state where Farmers had not previously sold insurance.

On November 28, 1983, Farmers answered plaintiffs' complaint denying that any oral promises had been made to induce plaintiffs to move to Ohio. Additionally, Farmers asserted counterclaims against all plaintiffs seeking repayment of monies Farmers paid to plaintiffs, pursuant to written contracts, while plaintiffs served Farmers as district managers in Ohio.

On February 14, 1984, the United States District Court for the Central District of California entered an order to show cause why plaintiffs' action should not be transferred to the United States District Court for the Southern District of Ohio since Farmers' claim against Lewelling (which was essentially identical to its counterclaim in the California action) was already pending before the district court in the Southern District of Ohio. Although plaintiffs opposed the transfer, on June 20, 1984, for "the convenience of the parties and the interest of justice," the District Court for

the Central District of California transferred the action to the District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a).[1] On October 22, 1984, plaintiffs' claims against Farmers were consolidated with Farmers' claim against Lewelling.

On July 16, 1986, defendants filed a motion, which was granted, for leave to assert a statute of limitations defense. *See* J.A. at 319. Then, with discovery completed, on July 18, 1986, Farmers moved for summary judgment as to plaintiffs' claims. On December 7, 1987, Farmers moved for summary judgment as to its counterclaims against plaintiffs.

On December 7, 1987, the district court granted Farmers' motion for summary judgment as to plaintiffs' claims, holding that: (1) plaintiffs Petrillo, White, and Huddleston were aware of the facts constituting the alleged fraud more than three years before filing their claims and such claims were thus barred by the three-year statute of limitations provided in Cal.Civ. Proc.Code § 338(4);[2] (2) all four plaintiffs' breach of contract claims were based upon oral promises allegedly made by Farmers before plaintiffs entered into *integrated,* written contracts that did not reflect the alleged promises, and that those claims were thus barred by the Ohio parol evidence rule; and (3) that all four of the plaintiffs' fraud claims were based upon the same alleged oral promises of future performance, not reflected in the subsequent, integrated contract, and were thus barred by the parol evidence rule under this court's holding in *Coal Resources, Inc. v. Gulf & Western Indus., Inc.,* 756 F.2d 443 (6th Cir.1985) (applying Ohio law). The district court, however, denied Farmers' summary judgment motion on its counterclaims against plaintiffs. J.A. at 1378–94.

Plaintiffs timely appealed. Although the counterclaims are still pending, on Febru-

---

**1.** 28 U.S.C. § 1404(a) provides as follows:
For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

**2.** While the district court did not conclude that plaintiff Lewelling's fraud claim was barred by the California statute of limitations, it nevertheless held that his breach of oral contract claim was barred under the Ohio parol evidence rule.

ary 19, 1988, the district court in an amended order *nunc pro tunc* entered a proper certification pursuant to Fed.R.Civ.P. 54(b), determining that there was no just reason for delay and directed the clerk to enter final judgment in favor of Farmers on plaintiffs' claims.

### B.

All four plaintiffs in this case raise common allegations. They each maintain that they were Farmers' agents in other states (White and Petrillo in California, Huddleston in New Mexico, and Lewelling in Oklahoma) and were induced to move to Ohio to become district managers for Farmers in reliance upon certain oral representations regarding Farmers' activities in Ohio. Essentially, they all claim that they were told that Farmers would: (1) conduct extensive advertising in Ohio, (2) sell insurance at rates below Farmers' competitors' rates in Ohio, (3) provide the district managers with authority to hire experienced agents from other insurance companies in Ohio, and (4) provide the district managers with the files of "orphan policyholders" from which they could expect to derive business.

All plaintiffs in the present case signed Farmers' form "District Managers' Appointment Agreement" which contained, among other things, an integration clause stating that the agreement "supersedes and takes the place of any and all prior agreements, written or otherwise...." The appointment agreement contains no mention of the prior oral representations allegedly made to plaintiffs. All plaintiffs testified when deposed that they read the agreement, understood its terms, yet failed to suggest alterations or additions.

Upon moving to Ohio, all plaintiffs discovered that the alleged oral representations made to them around October 1, 1979, were false. Specifically, it soon became apparent to all plaintiffs that Farmers would not conduct any "media blitz," and that Farmers' rates were *higher* than their competitors' rates. Moreover, in time, the plaintiffs all concluded that they would not be able to employ experienced agents from other insurance companies, nor be provided

the files of "orphan policyholders." As earlier stated, plaintiffs filed their complaint on October 6, 1983.

### II.

### A.

The plaintiffs' claims were dismissed pursuant to Fed.R.Civ.P. 56(c) on Farmers' motion for summary judgment. "On summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Industry Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). Thus, "summary judgment will not lie ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, "[w]here the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534 (6th Cir.1987).

### B.

As indicated, the present case was commenced by plaintiffs in the United States District Court for the Central District of California. The California district court, however, transferred this action to the Southern District of Ohio under 28 U.S.C. § 1404(a). Accordingly, under *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964), the Ohio district court was required to act as though California were the forum state. The court thus looked to California's choice of law rules in determining which state's substantive law should apply. *See Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941).

California follows a "governmental interests" analysis in resolving choice of law disputes. *See, e.g., Reich v. Purcell,* 67 Cal.2d 551, 432 P.2d 727, 63 Cal.Rptr. 31 (1967). Under this approach, the appropriate law to be applied is determined by comparing the law of the competing jurisdictions and examining the competing interests of each jurisdiction in the application of its law to the issue at hand. *Id.* An interests analysis should be conducted with respect to each issue in the case. *Camp v. Forwarders Transport, Inc.,* 537 F.Supp. 636, 638 (C.D.Cal.1982).

Plaintiffs *concede* that under California's choice of law rules, California would apply its own statute of limitations to plaintiffs' fraud claims as California's limitations period is shorter than Ohio's. The district court applied Cal.Civ.Proc. § 338(4), which provides a three-year limitations period for actions on fraud, commencing upon "the discovery, by the aggrieved party, of the facts constituting the fraud...." *Id.*

In undertaking a governmental interest analysis, a court must first determine whether the competing jurisdictions' laws actually conflict. If not, a "false conflict" is presented. *See Reich, supra; Hurtado v. Superior Court,* 11 Cal.3d 574, 522 P.2d 666, 114 Cal.Rptr. 106 (1974). In the present case, however, it appears that Ohio law and California law regarding parol evidence differ substantially. California follows the general approach that in cases of fraud in the inducement and promissory fraud, extrinsic evidence is admissible to prove the fraud despite a written contract containing an integration clause. *See Bank of America National Trust & Savings Assoc. v. Lamb Finance Co.,* 179 Cal. App.2d 498, 3 Cal.Rptr. 877 (1960). This court, however, has determined that Ohio's parol evidence rule bars the introduction of extrinsic evidence of promissory fraud where a subsequent written, integrated contract was entered into by the parties. *See Coal Resources, Inc. v. Gulf & Western Indus.,* 756 F.2d 443, 446 (6th Cir. 1985).

California's interest is thus in the protection of innocent individuals from fraudulent promises. On the other hand, Ohio has chosen to protect the force and effectiveness of integration clauses by completely barring extrinsic evidence introduced to contradict the terms of an integrated contract. In the present case, since the contract itself was entered into in Ohio, was to be performed in Ohio, and would be interpreted under Ohio law (*see* Cal.Civ.Code § 1646), Ohio's interest in protecting the force of the contract is directly implicated. However, at least with respect to plaintiffs Huddleston and Lewelling (non-California residents), California's interest in protecting its residents from fraud is not forwarded by the application of its law. However, as to White and Petrillo, California does have an interest to be forwarded in the application of its law. In balance, however, as the fraudulent promises were in large part made in Ohio, the contract was executed in Ohio, and the contract would be performed in Ohio, we hold that Ohio's interests predominate. The district court correctly concluded that Ohio's substantive law controls.

### C.

As indicated, the district court found California's three-year limitations period applicable. Plaintiffs White, Huddleston, and Petrillo all moved to Ohio around October 1979 and testified that by at least mid-1980, they were aware that the oral representations made to them would not be fulfilled. These plaintiffs, however, did not file their complaint until October 6, 1983, more than three years after the discovery by them of the alleged fraud. Thus, the district court's conclusion that these claims were time-barred is proper.

Plaintiffs, however, assert that Farmers should be estopped from raising a statute of limitations defense because, by their actions, Farmers induced plaintiffs to move to Ohio. However, plaintiffs have failed to produce any evidence that would entitle them to an estoppel argument under California law. California bars reliance upon the statute of limitations where a party has "lulled an adversary into a false sense of security." *See Carruth v. Fritch,*

36 Cal.2d 426, 224 P.2d 702 (1950). Moreover, California requires estoppel to be pleaded specifically, and as plaintiffs have failed to allege any facts which would support estoppel, the district court justifiably rejected this argument.

█ Plaintiffs also argue that the statute of limitations should be tolled until the time that they terminated their employment with Farmers. Plaintiffs rely upon *Wyatt v. Union Mortgage Co.,* 24 Cal.3d 773, 598 P.2d 45, 157 Cal.Rptr. 392 (1979), wherein the Supreme Court of California held that in the context of a civil conspiracy action, the statute of limitations does not begin to run until the "last overt act." In *Wyatt,* the court stated that the statute should "be tolled *even after the fraud is discovered, for so long as the sheer economic duress or undue influence embedded in the fraud continues to hold the victim in place." Id.* at 788, 598 P.2d at 65, 157 Cal.Rptr. at 408 (emphasis in original). *Wyatt* does not support plaintiffs.

Here the evidence is clear that plaintiffs, by their own accounts, were aware of the alleged fraud more than three years before filing their action. Yet no evidence was presented that sheer economic duress or overpowering influence rendered plaintiffs incapable of acting to protect their legal rights. As a general rule in California the statute begins to run when an individual becomes aware of fraudulent harm. *Davies v. Krasna,* 14 Cal.3d 502, 535 P.2d 1161, 121 Cal.Rptr. 705 (1975). We see no reason to deviate from the general rule in this case.

### D.

█ As earlier indicated, this court interpreted Ohio's parol evidence rule in *Coal Resources, Inc. v. Gulf & Western Indus.,* 756 F.2d 443 (6th Cir.1985). In *Coal Resources,* we held that a plaintiff could not introduce extrinsic evidence of future promises not contained in a written, integrated agreement:

> Although it is clear that making a contractual promise with no present intention of performing it constitutes promissory fraud in Ohio, ... and that extrinsic evidence always is admissible to show promissory fraud, Gulf & Western argues that a promissory fraud theory may not be used to impose additional obligations upon a party to a written contract containing an integration clause. According to the defendant, Coal Resources was entitled to show through extrinsic evidence that Gulf & Western had no intention, at the time the contract was entered into, of performing the promises it had made *in the written ... agreement.* The defendant earnestly contends, however, that Coal Resources was not entitled to show that Gulf & Western had no intention of performing promises which were not reflected in the written agreement.
>
> We agree with the defendant....

756 F.2d at 446 (citations omitted).

We went on to explain that under Ohio law an integration clause must be given effect despite alleged earlier oral representations. We noted that the purpose of such a clause is to prevent either party from relying upon representations made prior to execution of the agreement that were not included in the agreement. To allow evidence of promissory fraud in the face of a written integrated contract "would completely defeat the purpose of an integration clause." *Id.* at 447.

Under *Coal Resources,* plaintiffs may not rely on the alleged oral representations in the face of their district manager's appointment agreement. That agreement is fully integrated and contains no mention of the promises upon which plaintiffs rely. Thus, the district court properly granted summary judgment on these claims.

### E.

█ Plaintiffs moved to amend their complaint to add Farmers Group, Inc., a subsidiary of Farmers, as a defendant. Had the district court granted this amendment, complete diversity would have been destroyed, and the court would have lost jurisdiction over the case. The district court found that non-diverse parties should not be later joined as defendants in order

to defeat the court's jurisdiction. Thus, the district court acted properly in denying plaintiffs' motion to amend. *Cf. Owen Equipment Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978).

### F.

 Plaintiffs filed a notice to take the deposition of R.G. Lindsley, then-Chairman of the Board of Directors and Chief Executive Officer of Farmers Group, Inc. Farmers sought a protective order, and plaintiffs responded that they would cancel the deposition requests if Mr. Lindsley would agree to meet with plaintiffs regarding possible settlement of their action. Based on this fact and Farmers' representation that Lindsley had no knowledge as to facts pertinent to plaintiffs' action, the district court granted defendants' request for a protective order. Further, the district court found that plaintiffs' repeated filings regarding this deposition were undertaken in bad faith and thus granted sanctions in the amount of $1,702.50 against plaintiffs' counsel.

The district court's decisions to award sanctions and issue a protective order are within the broad discretion of the district court in managing the case. *See Century Products, Inc. v. Sutter,* 837 F.2d 247, 250 (6th Cir.1988); *Chemical & Indus. Corp. v. Druffel,* 301 F.2d 126, 129 (6th Cir.1962) ("Under the rules, the extent of discovery and the use of protective orders is clearly within the discretion of the trial judge."). Upon review of the record, we find the district court did not abuse its discretion.

### G.

 Although plaintiffs argue that this case should not have been transferred, the California district court's order transferring this case to the Southern District of Ohio is not reviewable by this court. *See* 15 C. Wright & A. Miller, *Federal Practice and Procedure* § 3855 (2d ed. 1986) ("[I]f a transfer was made from a district court in one circuit to a district court in another, the court of appeals in the latter circuit cannot directly review the action of the first dis-

trict court in ordering transfer."). Moreover, the Ohio district court's decision not to transfer this action back to California is a matter within its discretion reversible only for abuse. *See id.* at 475. Given all the factors upon which the California district court relied in transferring this case to Ohio, the district court below did not err in refusing to transfer the case back.

### III.

Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.