OKI DISTRIBUTING, INC., Plaintiff,

v.

AMANA REFRIGERATION,
INC., et al., Defendants.

No. C–1–92–192.

United States District Court,
S.D. Ohio,
Western Division.

April 12, 1994.

Leo Joseph Breslin, Lindhorst & Dreidame, Cincinnati, OH, for OKI Distributing, Inc.

Mark Christian Bissinger, Lawrence Robert Elleman, Dinsmore & Shohl, Cincinnati, OH, for Amana Refrigeration, Inc.

Lawrence Robert Elleman, Dinsmore & Shohl, Cincinnati, OH, for Raytheon Co.

## *ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

SPIEGEL, District Judge.

This matter is before the Court on the Defendant Amana's Motion for Summary Judgement (doc. 21), the Defendant Raytheon's Motion for Summary Judgement (doc. 22), the Plaintiff's Memorandum in Opposition (doc. 43), the Plaintiff's Memorandum in Opposition to the Defendant Raytheon's Motion (doc. 42), and the Defendants' Reply (doc. 44).

## BACKGROUND

This action arises out of a now terminated distribution agreement between the Plaintiff, O.K.I. Distributing, Inc. ("OKI"), a wholesale appliance distributor, and the Defendant Amana Refrigeration, Inc., a manufacturer of kitchen and laundry appliances. Prior to the fall of 1991, Amana used both the "one-step" and the "two-step" process of distribution. Under the "one-step" process, the manufacturer sells its products directly to retail dealers often through regional, manufacturer-owned, facilities called "factory branches." Under the "two-step" process, a manufacturer sells its product to independent wholesale distributors who resell the product to retail dealers. The Plaintiff in this case was an independent wholesale distributor under the

"two-step" process. In the fall of 1991, Amana canceled all but three of its retail distributors in an effort to eliminate its use of the "two-step" process and use only the "one-step" process.

The parties do not dispute that they had a written contract ("contract," "agreement" or "Distributor Agreement") that provided, among other things, that either party could terminate the agreement at any time and without cause. The parties also agree that the Defendant Amana in fact terminated the agreement with the Plaintiff. There is also no dispute that Iowa law governs that outcome of this case.

What *is* contested is the Plaintiff's claim that the written contract was modified both orally and through a course of dealing and course of conduct. The Plaintiff alleges that the modification permitted termination of the agreement only for cause, and that the Plaintiff's termination without cause, although consistent with the written contract, violated the agreement as modified. The Plaintiff also makes several other claims including promissory estoppel, fraud, breach of cross-over agreement, breach of fiduciary relationship, tortious interference and violation of federal antitrust law.

The Defendants have moved for summary judgement. First, Amana and the Defendant Raytheon, Amana's parent corporation, have moved for summary judgement claiming, among other things, that the contract's "at-will" clause is clear and was never, nor could it ever have been, modified by oral agreement or course of conduct. The Defendants also claims that even if the contract was modifiable by oral agreement or course of dealing, the Plaintiff has failed to point to sufficient evidence of this oral or course of dealing modification upon which a reasonable juror could find in favor of the Plaintiff.

Furthermore, Raytheon has separately moved for Summary judgment claiming that it is not responsible for the acts of Amana, and that this is not a case where the Court should "pierce the Corporate veil" in the event that Amana is found to be liable for any damages. Thus, Raytheon argues, the Court should grant summary judgement in its favor for that reason as well.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. at 2551; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108,

111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

■ Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990).

## DISCUSSION

### I

### The Written Agreement

#### A

In this case the Court must consider whether under Iowa law, the parties were free to modify the at-will provision of the agreement whether orally or through their course of dealing. The Court must further consider, whether, if such oral modifications were permitted, the parties did in fact modify the contract in the manner alleged by the Plaintiff.

The parties do not dispute that the contract contained the following language:

This agreement may be terminated by either party at any time for any reason upon giving written notice of same by certified mail to the other party, which termination shall be effective ten (10) days from the date of mailing said notice.

The contract also stated that the agreement could not be,

substituted, varied or modified in any manner except by written instrument duly signed by the parties hereto.

Additionally, the agreement unambiguously stated that,

written terms herein cannot be explained, supplemented or contradicted by evidence of any prior Distributor Agreement, course

of dealing, course of performance or usage of trade.

Finally, the agreement contained the following integration clause:

This agreement contains the final and complete Major Appliances Distributor Agreement governing the business relationship existing between the parties hereto. . . . This Distributor Agreement supersedes and cancels all prior Major Appliances Distributor Agreements, written or oral, between Amana and Distributor. . . .

■ Under Iowa law, at-will termination clauses are enforceable, and terminations under such clauses breach neither the express terms of the agreement nor the implied covenant of good faith and fair dealing. *See Corenswet, Inc. v. Amana Refrigeration, Inc.,* 594 F.2d 129, 138–39 (5th Cir.), *cert. denied,* 444 U.S. 938, 100 S.Ct. 288, 62 L.Ed.2d 198 (1979). Furthermore, under Iowa law, where a signed contract contains a clause excluding modification or recision except by a signed writing, the contract cannot be otherwise modified or rescinded. Iowa Code § 554.2209(2). Thus, where, as here, a contractual clause prohibits any modification which is not embodied in a signed writing, the parties are barred under Iowa law from modifying the contract either orally, or through course of dealing or course of conduct.

It is thus apparent that under the plain and unambiguous language of the contract, either party could terminate the agreement at any time for any reason. The contract, with equal clarity, forbids modification of the agreement by oral promise or course of dealing; contractual provisions enforced under Iowa law. Therefor, under the express language of the contract and applicable law, the Plaintiff's claim that the agreement was altered by oral representation and course of dealing must, as a matter of law, fail. Accordingly, we conclude that the Defendants are entitled to summary judgement on the breach of contract claim.

#### B

##### (i)

■ We also note that even if evidence of modification by way of oral representation or course of dealing were appropriate in this case, the Plaintiff has failed to point to suffi-

cient evidence to raise a genuine issue of fact regarding such modification. The Plaintiff proffers evidence which it claims demonstrates that statements were made by Amana which constitute an oral contractual modification and which signifies the nature of the parties' relationship and course of dealing. However, many of the alleged promises took place before the contract was signed.

■ Pre-formation evidence is barred by the Iowa parole evidence rule which states that,

[t]erms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not by contradicted by evidence of any prior agreement or of any contemporaneous oral agreement. . . .[1]

Iowa Code § 554.2202. In this case, as noted above, there was an express integration clause contained in the written contract. To allow pre-agreement discussions to modify the final written agreement would nullify the integration clause, render meaningless the express and unambiguous terms of the contract and eviscerate section 554.2202 of the Iowa Code. Accordingly, such statements are not appropriately considered by this Court. *See Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 217 (6th Cir. 1989) (integration clause completely barred introduction of extrinsic evidence to contradict the terms of an integrated contract); *Coal Resources, Inc. v. Gulf & Western Industries*, 756 F.2d 443, 447 (6th Cir.1985) ("the purpose of an integration clause stating that there are no agreements or understandings between the parties other than those reflected in the written contract is, of course, to prevent either party from relying upon statements or representations made during

negotiations that were not included in the final agreement"). Therefore, where a contract is a final integration of the parties' agreement, and the contract expressly allows termination at-will, parol evidence may not be offered to vary the written terms of the contract. *See Young v. Ceder County Work Center, Inc.*, 418 N.W.2d 844 (Iowa Sup.Ct. 1987).

■ On the other hand, consideration of *post*-contract oral agreements do not violate the parole evidence rule.[2] In order for extra-contractual statements or conduct to operate as a valid modification, the expressions, interpreted in light of the surrounding facts, must make the Plaintiff's understanding that a modification occurred a reasonable one. *Id.* The Defendants' understanding that no modification occurred must, conversely, be unreasonable. *Id.*

■ The Plaintiff has failed to point to evidence in the record sufficient to support a finding by a reasonable juror that an oral modification had occurred, or that, in light of the circumstances of this case, the Plaintiff's belief that the parties modified the contract from an at-will contract to a for-cause contract was reasonable. For example, the Plaintiff notes that "Chad Calabria, an Amana representative and privy to its policies, representations and state of mind, stated that Amana would emphasize again and again the 'two step distribution concept' and that it was a 'vital force' in Amana's sales and marketing efforts." Similarly, the Plaintiff claims that Amana's president stated that "Amana was dedicated to the two-step distribution process." Besides these general references given to Amana distributors during the course of periodic "pep-talks," the Plaintiff makes nothing more than conclusory allegations.

In light of the clear language of the Contract's integration clause, its at-will clause, as well as its unambiguous prohibitions on oral

---

1. This section does allow supplementation of the terms of the agreement by evidence of course of dealing. However, as discussed below, course of dealing is only admissible as evidence of modification to the extent that it is consistent with the written terms of the contract, and not to contradict contractual terms. See Part (ii) below.

2. Although, as noted above, in this case such agreements do violate the express "written modification-only" clause of this contract as well as Iowa law.

or course of dealing modification, it is dubious at best whether even an express assurance by Amana's representatives could have constituted a valid modification. See Part A above. However, in this case, where the Plaintiff points to nothing more than vague statements in support of this material contractual alteration, we conclude that no issue of fact exists upon which a reasonable juror could find that the parties in fact modified the agreement. *See Corenswet*, 594 F.2d at 136 (where Amana's president's statement that Amana does "not cancel a distributor without a reason, without a good reason" and "we do not cancel our distributors without a reason" were insufficient to modify the same termination clause at issue in this case under Iowa law). It is simply not reasonable to conclude that, in the face of the clear contractual language, that a reasonable person would consider such statements to be a promise to eliminate an at-will clause—in flagrant violation of a clause prohibiting any modification unless embodied in a signed writing—and replace it with a termination-for-cause proviso. The Defendants are therefore entitled to summary judgement on this point.

### (ii)

■ Additionally, with respect to the Plaintiff's allegations of course of conduct and course of dealing (to the extent it would even be relevant in light of the express terms of the agreement and Iowa law) we note that although course of dealing may be appropriate under certain circumstances to demonstrate modification of contractual terms, course of conduct is only relevant to the extent that it does not directly conflict with written terms of the contract. *Corenswet*, 594 F.2d at 136.

■ In this case, the Plaintiff wishes to demonstrate through course of conduct that the parties had a termination for cause only proviso; a proviso diametrically contrary to the terms of the written contract's at-will clause. Therefore, the course of dealing evidence upon which the Plaintiff relies is expressly offered for the purpose of contradicting the terms of the written agreement. Consequently, it would be inappropriate to allow such a course of dealing to modify the

express at-will clause of the contract. *See id.* Thus, the Defendants are entitled to summary judgement on this point as well.

### II

### Promissory Estoppel

The Plaintiff also claims that in light of the representations of Amana's "commitment" to the "two-step distribution process" upon which the Plaintiff claims it relied, the Plaintiff is entitled to recover under a theory of promissory estoppel. We disagree.

■ The Iowa Supreme Court has defined the elements of Promissory Estoppel as follows:

1) A clear and definite agreement; 2) Proof that the party seeking to enforce the agreement reasonably relied upon it to his detriment; and 3) A finding that the equities support enforcement of the agreement.

*Amana Society v. Colony Inn, Inc.*, 315 N.W.2d 101, 117 (Iowa Sup.Ct.1982); *Uhl v. City of Sioux City*, 490 N.W.2d 69, 73 (Iowa Ct.App.1992) (citing *Amana* ). Thus, in order to recover under a theory of promissory estoppel the Plaintiff must prove that the Defendants made clear and definite representations upon which the Plaintiff reasonably relied to its detriment. *Amana*, 315 N.W.2d at 117; *Uhl*, 490 N.W.2d at 73; **Restatement (Second) Contracts** § 90; John D. Calamari & Joseph M. Perillo, **Contracts** § 6–1, at 272 (3d Ed.1987).

■ First, the Plaintiff, as discussed above, relies on unspecific words by Amana representatives to the effect that the "two step distribution concept" was a "vital force" in Amana's sales and marketing efforts, and that "Amana was dedicated to the two-step distribution process." These words contain no "clear and definite agreement" to alter the at-will clause of the contract, nor any other agreement that the contract could not be terminated at any time for any reason. *See, e.g.,* Part IB(i) at 8–9.

■ Furthermore, the Plaintiff dedicates much of his Memorandum in Opposition to establishing that OKI *relied* on Amana's alleged representations, including the invest-

ment of time, energy and money into its operations. Such investments pursuant to an at-will distributorship agreement are not unusual. *See e.g., Corenswet,* 594 F.2d at 132. Additionally, the Plaintiff has failed to establish that it changed its position, either by engaging in a course of conduct it would not have, or by forbearing on some course of conduct it would have embarked on, had it not been for the Defendants' alleged "promises;" OKI simply did what it would have done as a distributor for Amana.

Far more importantly, however, the written contract contained express and unambiguous terms stating that the parties enjoyed an at-will relationship. The contract further provided that no course of conduct or oral representations could modify the contract. In light of the express contractual terms and the vague and imprecise nature of the representations upon which the Plaintiff relies, we conclude that any reliance the Plaintiff may have placed upon the alleged course of dealing or oral "promises" could not have been reasonable. *See Marketing West, Inc. v. Sanyo,* 6 Cal.App. 4th 603, 7 Cal.Rptr.2d 859 (1992) (holding that plaintiffs—independent sales representatives—could not have reasonably relied on express promises by defendant's senior vice president that at-will clause of contract did not apply to them in light of clear and unambiguous at-will language of contract).

Thus, we conclude that no reasonable juror could find that a clear and definite agreement occurred, nor that the Plaintiff was reasonable in any reliance it even arguably could have placed on the Defendants' statements. Accordingly, as promissory estoppel requires a clear and definite agreement, and not only reliance, but reasonable reliance on that agreement, and as the record is void of any evidence supporting such a claim, we conclude that the Defendants are entitled to summary judgement as a matter of law.

## III

### Crossover Payment Agreement

▮ The Plaintiff also claims that the Defendants breached a "crossover agreement" when the Appliance Store of Pittsburgh purchased Amana products through a wholly owned and operated Amana branch and "set up shop" within OKI territory in the greater Dayton area. The Defendants claims that the crossover agreement was a permissive, not mandatory provision, and thus, Amana's failure to credit the Plaintiff's account does not give rise to any liability on Amana's part.

The transhipping/cross-over provision of the Distributor's agreement provided,

Amana *may* debit distributor's account in the amount of $1,000.00 for each instance in which product originally sold to Distributor is transhipped by any other person or entity out of the Distributor's Authorized territory for resale in another distributor's authorized territory and Amana *may* credit the other distributor's account in the amount of $1,000.000. This provision *does not* pertain to Product shipped out of Distributor's authorized territory in accordance with the Amana's Cross-over program.

(emphasis added). Pursuant to the crossover program, Amana could grant permission to a distributor to cross-over (or tranship) without risking the $1,000.00 debit/credit provision.

The Plaintiff also cites in further support of its position, a memorandum issued along with the above agreement. That memorandum provided in pertinent part,

As *outlined in Amana's Distributor's agreement,* dealers may be sold only through a distributor's/branch's authorized territory. However, Amana recognizes there may be Amana dealers with multiple locations which cross over into more than one distributor's/branch's territory. Therefore, to continue doing business with such dealers (or crossover accounts) *in a manner that is consistent with Amana's marketing and sales strategies,* a new Crossover policy is being implemented. . . .

\* \* \* \* \* \*

Should a dealer cross over into another territory in 1990, *without your first obtaining Amana's approval,* the selling distributor/branch will be considered a transhipper. This is in direct violation of Ama-

na's Distributor agreement. Amana will enforce the Distributor Agreement, which provides that a selling distributor/branch *may* be subject to a $1,000.00 debit for each instance of transhipment.

(emphasis added). The Plaintiff claims that under the crossover agreement, for every "crossover" sale of an Amana appliance, Amana should have credited the Plaintiff's account in the amount of $1,000.00. The Plaintiff claims that because Amana, directly through its own branch, distributed Amana appliances within OKI territory, and that because at least 300 appliance were sold in the Plaintiff's territory, Amana is liable to the Plaintiff in the amount of at least $300,-000.00. We disagree.

First, under the plain language of the agreement, this particular clause is permissive, not mandatory. It is clear from the language of the contract that Amana had the *option* of debiting the account of the transhipper and crediting the account of the transhippee. Consequently, if Amana elected not to do so, Amana did not violate the agreement. Thus, as the contractual language unambiguously permits, but does not require, Amana to debit and credit distributors' accounts under the agreement, we conclude that there exists no genuine issue of fact upon which a reasonable juror could conclude that Amana breached the agreement. *See Potti v. Duramed Pharmaceuticals, Inc.*, 938 F.2d 641, 647 (6th Cir.1991).[3]

Additionally, the memorandum purportedly issued by Amana's Vice President of sales for Major Appliances, upon which the Plaintiff heavily relies, only supports the Defendants' position. To the extent that the memorandum is indicative of any Amana policy statement underlying the crossover agreement, the policy, apparently, is aimed at discouraging transhipping *only* where to do so would be "in a manner that is [in]consistent with *Amana's* marketing and sales strategies." Thus, it is not at all surprising that under the agreement Amana may approve a cross-over into another distributor's territory

if Amana deems it advantageous; Amana may grant approval where it deems it consistent with Amana's marketing and sales strategies. This underscores the permissive nature of the cross-over agreement.

Finally, as the Plaintiff readily points out, in this instance it was Amana itself that sold the appliances to the retailer. Thus, since Amana itself was the party that "crossed-over," Amana undoubtedly deemed it "consistent with Amana's marketing and sales strategies" to do so, and thus worthy of its own approval. Amana thus did not violate the agreement. Accordingly, for the forgoing reasons, we hereby conclude that the Defendants are entitled to summary judgement on the Plaintiff's cross-over claim.

## IV

### Fraud, Tortious Interference Breach of Fiduciary Duty & Antitrust Violations

#### A

#### Fraud

##### (i)

The Plaintiff has also made a number of other claims allegedly stemming from its business relationship with the Defendants. First, the Plaintiff claims that the Defendants committed fraud by failing to communicate to its distributors that it was planning on eliminating the "two-step" process. We disagree.

Under Iowa law, fraud consists of 1) a representation about the past or present; 2) falsity; 3) materiality 4) scienter 5) intent to deceive; 6) reasonable reliance on the promise; and 7) resulting in damage. *Robinson v. Perpetual Services Corp.*, 412 N.W.2d 562, 565 (Iowa Sup.Ct.1987); *Irons v. Community State Bank*, 461 N.W.2d 849, 853 (Iowa Ct.App.1990). Although the fraud may also arise from a failure to disclose material facts (providing that the other elements are also present) the party failing to·disclose the

---

**3.** As the *Potti* court stated, "interpretation of written contract terms is a matter of law for initial determination by the court.... [i]t is only when the relevant language is ambiguous that the job of interpretation is turned over to the fact finder ... and the determination whether a contract is ambiguous is made as a matter of law by the court." 938 F.2d at 647 (citations omitted).

information must have a legal duty to do so. *Irons*, 461 N.W.2d at 854.

■ First, the Plaintiff has failed to persuade the Court that there was any duty on the part of the Defendants to disclose to their distributors that they were planning to make a structural change in the way the company operates. A manufacturer does not have a duty to insulate distributors from all economic hardship at its own expense, even after a distributor has made substantial investments in the franchise. *See Gen. Aviation v. Cessna*, 13 F.3d 178, 183 (6th Cir. 1993).

■ Furthermore, much of the Plaintiff's evidence focuses on alleged "promises" made prior to the formation of the Distributor Agreement contained in speeches and "pep-talks" of Amana representatives. Such pre-contract representations are not admissible to prove promissory fraud, unless they are offered to prove fraud with respect to a provision contained in the written contract. *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 217 (6th Cir.1989); *Coal Resources, Inc. v. Gulf & Western Industries*, 756 F.2d 443, 447 (6th Cir.1985). As the court in *Coal Resources* stated,

> [a]lthough it is clear that making a contractual promise with no present intention of performing it constitutes promissory fraud ... and that extrinsic evidence is always admissible to show promissory fraud, ... [the defendant] argues that a promissory fraud theory may not be used to impose additional obligations upon a party to a written contract containing an integration clause. According to the defendant, [the plaintiff] ... was entitled to show through extrinsic evidence that [the defendant] ... had no intention, at the time the contract was entered into, of performing the promises it had made *in the written ... agreement.* The defendant earnestly contends, however, that [the plaintiff] ... was not entitled to show that [the defendant] had no intention of performing promises which were *not* reflected in the written agreement.

We agree with the defendant.

756 F.2d at 446 (citations omitted) (emphasis in original). Similarly, in *Lewelling* the court stated that the purpose of the integration clause "is to prevent either party from relying on representations made prior to execution of the agreement that were not included in the agreement. To allow evidence of promissory fraud in the face of a written integrated contract 'would completely defeat the purpose of the integration clause.'" 879 F.2d at 217 (quoting *Coal Resources*, 756 F.2d at 446).

In this case, as discussed above, the contract contained an integration clause. The Plaintiff relies on the pre-contract extrinsic evidence for the purpose of proving fraud with respect to promises *not* contained in the written contract. Consequently, the pre-contract statements are inappropriate, and thus insufficient to defeat the Defendants' motion for summary judgment.

Additionally, the post-contract evidence stemming from the "pep-talks" wherein the Defendants stated their devotion to the "two-step" process do not constitute "promises" upon which the Plaintiff could reasonably rely. Beyond those unspecific statements, as evidence of fraud, the Plaintiff makes conclusory allegations to the effect that the Defendants intentionally induced the Plaintiff to spend time and money looking into new markets only to ultimately deny the Plaintiff the distributorship in that area. The Plaintiff, however, does not point to any evidence in the record upon which a reasonable juror could conclude that the Defendants *intentionally misled* the plaintiff into reasonably relying on the misrepresentations. Absent evidence of the existence of these elements upon which a reasonable juror could rely, the Plaintiff may not prevail on its fraud claims. *See Robinson*, 412 N.W.2d at 565. Thus, there is no genuine issue of material fact regarding whether any promise was ever made (or a material fact omitted), much less that such was made with the *intent* of misleading the Plaintiff into relying to its detriment. Thus, the Plaintiff's conclusory allegations must fail as a matter of law. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir.1990).

## (ii)

■ The Plaintiff's also claims that the Defendants committed fraud in connection with the "Trailing Credits" program. The trailing credits program involves the Nationwide Buying Group, an association of appliance dealers that attempts to obtain better pricing and terms for its members than might be normally available. "Trailing Credits" are volume discounts for certain large volume dealers to be paid by distributors in the form of rebates. Swallen's, OKI's largest dealer, qualified for "trailing credits."

Prior to finalization of the 1991 pricing and terms agreement between Amana and Nationwide under the trailing credits program, OKI contacted Swallen's, OKI's largest dealer, regarding the sale and purchase of appliances. However, the 1991 Amana–Nationwide agreement had not been finalized, and thus the only document purporting to reflect the prices under the as yet unfinalized agreement was not accurate. The fact that the agreement had not been finalized and that the prices may not have been accurate was a fact about which Amana informed the Plaintiff.

Upon careful consideration, we conclude that the Plaintiff has pointed to nothing in the record generating a material issue of fact on the issue of fraud in the "trailing credit program." OKI admitted that it took a "gamble" on the prices on the unofficial, unfinalized agreement, and that OKI "felt it was similar to price sheets we had in the past." We find no other evidence in the record to the effect that Amana made material misrepresentation or omission with the intent of misleading and inducing OKI into engaging in some course of conduct to OKI's detriment. Consequently, the Defendants are entitled to summary judgement on this point.

## B

### Breach of Fiduciary Duty Tortious Interference and Antitrust Claims

The Plaintiff also claims that the Defendants breached a fiduciary duty owed to the Plaintiff, that Defendants committed tortious interference with its business dealings, and finally, that the Defendants violated the federal antitrust laws. We disagree.

■ First, it is well established that a manufacturer-distributor relationship, absent more, does not give rise to a fiduciary relationship. *See Aerospace America v. Abatement Technologies*, 738 F.Supp. 1061, 1070 (E.D.Mich.1990); *Power Motive Corp. v. Mannesmann Demag Corp.*, 617 F.Supp. 1048, 1051 (D.Colo.1985); *see W.K.T. Distributing Co. v. Sharp Electronics*, 746 F.2d 1333, 1336–37 (8th Cir.1984). In this case, the Plaintiff has failed to point to any evidence in the record to establish that a deeper relationship than a normal manufacturer/distributor relationship existed.

■ Furthermore, the Plaintiff claims that the Defendants tortiously interfered with OKI's business opportunities. We find that the Plaintiff has failed to point to evidence sufficient to defeat the Defendant's motion for summary judgement.

■ In order to commit tortious interference, the Plaintiff must prove that the Defendants, without privilege to do so, intentionally and improperly induced, or otherwise purposefully caused a third party not to enter into, or continue, a business relationship with the Plaintiff, or perform a contract with another. *Preferred Marketing v. Hawkeye Nat. Life*, 452 N.W.2d 389, 395–396 (Iowa Sup.Ct.1990); *Nesler v. Fisher & Co.*, 452 N.W.2d 191 (Iowa Sup.Ct.1990); **Restatement (Second) Torts** § 766. The Plaintiff supports its claim with nothing more than conclusory allegations. Although OKI may have realized less profits or even lost money as a result of the termination, OKI has failed to point to evidence in the record to establish that the Defendants purposefully caused a third party not to enter into, or to discontinue a business relationship, or to breach a contract. There thus exists no genuine issue of fact in dispute.

■ Finally, the Plaintiff claims that the Defendants have violated the antitrust laws by use of the trailing credit program because it resulted in lower prices for some dealers than paid by others; i.e. price discrimination. See 15 U.S.C. § 13(a). The Plaintiff puts

great reliance on its assertion that summary judgement is inappropriate in a "complex" antitrust case because "motive and intent play leading roles." However, again, the Plaintiff points to no evidence in the record establishing that the defendant's were motivated or acted with the intent to hinder competition or engage in price discrimination.

Furthermore, it is well established that where, as in this case, the Plaintiff fails to point to any evidence in the record raising a genuine issue of fact, summary judgement is appropriate notwithstanding the fact that the case happens to be complex, or that it involves antitrust claims or state of mind such as motive and intent. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

Finally, section 13(a) does not prevent price differentials based on the sale of differing quantities of goods to different buyers, i.e. volume discounts. 15 U.S.C § 13(a). Thus, section 13(a) does not ban price discrimination *per se*, but only non-cost justified discrimination. *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1417–8 (11th Cir.1990); 15 U.S.C § 13(a).

In this case, the Plaintiff does not dispute that Swallen's was a high volume Amana customer, and in fact, OKI's largest. Besides making conclusory allegations, the Plaintiff does not refute that the pricing differential with Swallen's was based on the volume of Swallen's business. Consequently, we conclude that as the Plaintiff has failed to point to evidence in the record sufficient to raise a genuine issue of material fact in connection with its antitrust claim, the Defendants must prevail on their motion for summary judgement.

### CONCLUSION

Accordingly, for the forgoing reasons, we hereby GRANT the Defendants' Motions for Summary Judgement (docs. 21 & 22), and this action is hereby DISMISSED.

SO ORDERED.