ESTATE OF TRECKER (Edgar W.) : TRECKER (Patricia),
Appellant, v. TRECKER (Edgar W., Jr.) and others,
Coexecutors, Respondents.

*No. 262. Argued February 4, 1974.—Decided March 5, 1974.*
(Also reported in 215 N. W. 2d 450.)

448

For the appellant there was a brief by *Schwemer & Schwemer* of Milwaukee, and oral argument by *Paul E. Schwemer.*

For the respondents there was a brief by *Prieve, Gerlach & Meyer* of Milwaukee, and oral argument by *Charles E. Prieve.*

HANLEY, J. The following issues are presented on appeal:

1. Does the filing of a federal joint income tax return create a right under federal law to an interest in a refund resulting therefrom in the spouse to whom no substantial income or deductions are attributable?

2. Does the filing of a federal joint income tax return operate as a transfer, conveyance or assignment of an individual's interest in the income to his spouse to whom no substantial income or deductions are attributable?

3. Is the wife herein entitled to a one-half interest in the refund resulting from a filing of a federal joint income tax return by virtue of a joint enterprise?

4. Does a prenuptial agreement entered into by the decedent and the petitioner operate so as to bar the petitioner from all right, title and interest in a joint tax refund which resulted from decedent's overpayments?

*Federal right.*

Prior to the enactment of the federal joint income tax return there existed a great inequality as to the income tax treatment of married individuals. Such inequality resulted from the fact that while those married individuals residing in community property states were effectively permitted to split income between themselves and thus diminish their income tax liability, married individuals residing in common-law states were personally liable for income taxes due on their individual incomes.

In an attempt to put taxpayers of common-law states on a parity with taxpayers of community property states, sec. 6013 [1] was enacted. As a result of sec. 6013, married individuals residing in common-law states were permitted to file federal joint income tax returns and to effectively split income between themselves as had previously been permitted married individuals residing in community property states. [2] The law, while providing such benefits and the concomitant liabilities from filing a joint return did not—as the appellant contends—create any property rights in the jointly filing spouses.

It is firmly established that the existence of any property rights in a tax refund resulting from the filing of a federal joint income tax return is determined under state law. The mere partaking in a federally created administrative taxation procedure, *i.e.*, joint return— does not result in the creation of substantive property rights.

Such a rule was originally developed in the case of *Matter of Illingworth* (D. C. Ore. 1956), 51 A. F. T. R. 1215, 56–2 USTC 56,617. In *Illingworth,* the court was called on to determine whether the wife of a bankrupt was entitled to one half of the refund check received by the parties as a result of filing a joint return. Since no income or taxes withheld were attributable to the wife, the court ordered the wife to endorse the tax refund check and held that the trustee in bankruptcy, as successor to the husband's claim, was entitled to the entire amount of the refund. The court based its holding on the rationale that sec. 6013 intends no change in the ownership of property as between those filing the joint return. The ownership of any refund which resulted from the filing of a joint return must be determined under state law.

---

[1] IRC (1954), sec. 6013.

[2] *McClure v. United States* (4th Cir. 1955), 228 Fed. 2d 322.

"The law, while providing certain benefits in the filing of a joint return and imposing certain liabilities, does not go as far as to change the ownership of any property between the husband and wife. The filing of the joint return, therefore, did not vest in the wife, any title to any part of the tax refund.

"The Government in making a tax refund makes no attempt to determine what part of such refund should belong to the husband and what part to the wife, but leaves it to the recipients to decide how such refund shall be divided or used." [3]

In *Stanley A. Dunn* (1963), 22 TCM 915 the tax court concurred with the holding of *Matter of Illingworth*. In *Stanley A. Dunn*, the husband, while living in Madison, filed a joint return for 1958. Nearly all of the taxable income for 1958 was earned by the husband. The parties to the joint return were divorced subsequent to the tax year and the husband used the refund check to pay a support obligation to the wife. The court held that the filing of a joint return did not have the effect of conforming the income of one spouse to that of the other.

"Since the income reported in 1956 was predominantly that of petitioner, we think he should be allowed to use it in meeting his support obligations." *Stanley A. Dunn, supra,* page 917.

Recently, *Illingworth* was relied upon by the court in *In re Wetterott* (8th Cir. 1972), 453 Fed. 2d 544, in ruling that no change in ownership resulted from the mere filing of a federal joint tax return. Rather, the court held, any transfer of ownership of an individual's rights to an income tax refund is controlled by state law. Since all taxable income for the year 1969 was the property of the husband and since the joint return did not operate as a conveyance under Missouri law, then the $541.67 tax refund was the individual property of the

---

[3] *Matter of Illingworth, supra,* at 56–2 USTC 56, 618, 619.

husband and his successor in title—the trustee in bankruptcy.

In support of her position that the filing of a joint federal income tax return creates a right under federal law to an interest in a resulting tax refund, the appellant relies on a distinguishable precedent. While filing a joint income tax return does create a joint and several liability for. underpayment, there exists no concomitant joint and several right to the refund therefrom. The case of *Pettengill v. United States* (D. C. Ill. 1966), 253 Fed. Supp. 321, upon which the appellant relies, holds nothing to the contrary.

*Pettengill* involved three tax refund actions to recover about $67,000 in income taxes alleged to have been erroneously assessed against and collected from the estate of Arthur S. Hansen. While it is not known what amount of the taxable income for the period in question was attributable to the decedent husband, the taxes resulting from the filing of the joint return were individually paid by the decedent's widow. Thus, since the tax allegedly erroneously paid by the decedent's widow was her individual property, and since the mere payment of said taxes did not constitute any transfer or conveyance of ownership rights, the refund allegedly due is undoubtedly the individual property of the widow.

". . . No authority has been cited in support of this position. Considering Revenue Ruling 56–92, 1956–1 C. B. 564, it would seem that joint and several *liability* for underpayment *produces a concomitant joint or several right to recovery for overpayment of taxes. Here the widow herself, individually, paid all of the taxes under the joint return out of her own personal funds.* Under these circumstances, I find no basis upon which I can refuse to permit her to maintain her action individually." (Emphasis supplied.) [4]

---

[4] *Pettengill v. United States, supra,* at page 325. *See,* however, Revenue Ruling 56–92, 1956–1 C. B. 564; Revenue Ruling 71–324, 1971–2 C. B. 410.

We conclude that appellant's contention that the filing of a federal joint tax return creates a federal right to a joint and several interest in the refund resulting therefrom is without merit.

*Rights under state law.*

The appellant contends that the filing of a federal joint income tax return created either (a) a common-law joint tenancy, (b) a contractual joint tenancy, or (c) an indestructible remainder. We find no merit to these contentions.

Joint tenancies in personal property may be created in Wisconsin. Sec. 230.45 (2), Stats. 1969.[5]

"Any deed, transfer or assignment of real or personal property from husband to wife or from wife to husband which conveys an interest in the grantor's lands or personal property and by its terms evinces an intent on the part of the grantor to create a joint tenancy between grantor and grantee shall be held and construed to create such joint tenancy, and any husband and wife who are grantor and grantee in any such deed, transfer or assignment heretofore given shall hold the property described in such deed, transfer or assignment as joint tenants."

However, to create a joint tenancy, several prerequisites are essential.[6] Initially, no interest in property can be created without a transfer of an interest in property—

---

[5] Sec. 230.45, Stats., was repealed by ch. 334, Laws of 1969, effective July 1, 1971. *See* presently sec. 700.19.

[6] Sec. 230.45, Stats., changed the rules of common law with respect to the creation of joint tenancies between husband and wife. *Estate of Gabler* (1953), 265 Wis. 126, 60 N. W. 2d 720, 61 N. W. 2d 823. If, however, the rules of common law were still applicable herein, the unities of time and title would be absent and no joint tenancy created. *See Zander v. Holly* (1957), 1 Wis. 2d 300, 84 N. W. 2d 87; *Nichols v. Nichols* (1969), 43 Wis. 2d 346, 350, 168 N. W. 2d 876.

*i.e.,* a deed, transfer or assignment. Sec. 230.45, Stats. 1969. Since the mere filing of a federal joint income tax return does not operate as a deed, transfer or conveyance [7] we do not see how an interest in property was created in the petitioner. Likewise, since the creation of a joint tenancy requires intent on the part of the creator,[8] and since the trial court found that such an intent was absent,[9] no joint tenancy in the refund could be created.

The appellant then contends that if the court fails to find that a common-law joint tenancy existed then the court should find that a contractual joint tenancy was created. In so contending, however, the appellant cites no precedent to convince the court that: (a) the filing of a federal joint tax return is within the ambit of sec. 221.45, Stats.,[10] upon which the contractual joint bank account cases rest,[11] and (b) there existed the requisite intent necessary so as to create such a contractual joint tenancy.[12] For these reasons, the appel-

---

[7] *See Estate of Gabler, supra,* wherein the court determined that the provisions of the respective parties' wills did not create or establish a joint tenancy in the property thereunder in that such wills did not constitute a "deed, transfer, or conveyance" within the meaning of the statute.

[8] Sec. 230.45 (2), Stats. 1969.

[9] Such is a finding of fact and will not be overturned by this court unless contrary to the great weight and clear preponderance of the evidence.

[10] Sec. 221.45, Stats., states in effect that bank deposits made in the names of two or more persons are payable to either.

[11] *See Estate of Michaels* (1965), 26 Wis. 2d 382, 132 N. W. 2d 557; *Zander v. Holly* (1957), 1 Wis. 2d 300, 84 N. W. 2d 87; *Estate of Staver* (1935), 218 Wis. 114, 260 N. W. 655. *See also:* O'Flaherty, *Joint Bank Accounts in Wisconsin,* 53 Marq. L. Rev. (1969), 118.

[12] The trial court found that the requisite intent necessary to create a joint tenancy was not present. *See Estate of Roth* (1964), 25 Wis. 2d 528, 131 N. W. 2d 286.

lant's contentions are without merit. The theory of indestructible remainder is also without merit.

*Question of joint venture.*

The appellant next contends that if the court fails to find a survivorship right in the wife by virtue of a joint tenancy, then the petitioner is entitled to half the refund as co-adventurer in a joint enterprise. This contention is likewise without merit.

In *Edlebeck v. Hooten* (1963), 20 Wis. 2d 83, 121 N. W. 2d 240, this court stated the specific requisites for a joint enterprise were:

". . . (1) Contribution of money or services but not necessarily in equal proportion by each of the parties, (2) joint proprietorship and mutual control over the subject matter of the venture, (3) an agreement to share profits though not necessarily the losses, and (4) a contract express or implied establishing the relationship." [13]

Such prerequisites have not been proven by the petitioner. There is no proof of mutual control, an agreement to share profits, or a contract establishing relationship. In fact, the contrary has been found by the trial court and correctly so.

Since the petitioner has failed to show that she has any interest in the property in question under any of the numerous contentions advanced, it is not necessary to reach the remaining issue of whether or not the petitioner's interest in the tax refund is barred by the prenuptial agreement.

We conclude that the tax refund was the sole property of the decedent and was properly inventoried in decedent's estate and the order appealed from must be affirmed.

*By the Court.*—Order affirmed.

---

[13] *Edlebeck v. Hooten, supra,* at page 88.