IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 10, 2021 Session

## JERRY MOOREHEAD ET AL. v. TENNESSEE FARMERS MUTUAL INSURANCE COMPANY

**Appeal from the Circuit Court for Moore County**
**No. 2017-CV-1104          M. Wyatt Burk, Judge**

_____

### No. M2020-01319-COA-R3-CV

_____

In litigation regarding an automobile accident, Appellants Jerry and Debra Moorehead reached a mediation agreement with their uninsured motorist carrier, Appellee Tennessee Farmers Mutual Insurance Company ("Farmers"). Under the mediation agreement, Farmers agreed to pay $50,000 to each of the Mooreheads in full settlement of the dispute. Farmers paid only $25,000 each to Mr. and Mrs. Moorehead, deducting amounts it had previously paid under the policy for medical expenses. The Mooreheads moved the trial court to enforce the agreement, arguing that they were due $50,000 each in "new" money. The trial court held that the mediation agreement was enforceable but that the amount owed to the Mooreheads was properly offset by the previous amounts Farmers paid. On review, we conclude that the plain language of the mediation agreement promised future payment of $50,000 to each of the Mooreheads without reference to or incorporation of either the insurance policy or previous payments made thereunder. Reversed and remanded.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and CARMA DENNIS MCGEE, JJ., joined.

Eric J. Burch, Manchester, Tennessee, for the appellants, Jerry Moorehead and Debra D. Moorehead.

Walter F. Nichols, Manchester, Tennessee, for the appellee, Tennessee Farmers Mutual Insurance Company.

### OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

On May 29, 2017, Appellants Debra and Jerry Moorehead were injured in a car accident. The at-fault driver was 16 years old at the time of the accident. On October 13, 2017, the Mooreheads filed suit against the driver and his parents, Danny and Jennifer Crabtree.[1] Both the Crabtrees and the Mooreheads were insured by Farmers. The parties attended mediation on May 29, 2020. At mediation, the Mooreheads and the Crabtrees were represented by their own counsel. In addition, the Crabtrees' underlying insurance carrier, Farmers, was represented by Todd Bobo, and the Mooreheads' uninsured motorist carrier, Tennessee Farmers ("Farmers UM"), was represented by Walter Nichols. The parties arrived at a "Mediation Agreement" (the "Agreement"), which provided:

> WHEREAS, the parties are engaged in litigation in the above-styled matter, which litigation involves a claim for damages as a result of an automobile accident that occurred in Moore County, Tennessee, on May 29, 2011.
>
> WHEREAS, as a result of Mediation conducted on this date, the parties have now resolved all matters of dispute between themselves and desire to execute this Mediation Agreement for the purpose of confirming this settlement.
>
> NOW, THEREFORE, FOR AND IN CONSIDERATION of the premises above stated, the parties do hereby agree as follows:
>
> 1. The Crabtree[s'] insurance company, Tennessee Farmers, will pay Debra Moorehead $50,000.00 for full and complete settlement of the case.
>
> 2. The Moorehead[s'] UM carrier, Tennessee Farmers, will pay Debra Moorehead $50,000.00 for full and complete settlement of the case.
>
> 3. The Crabtree[s'] insurance company, Tennessee Farmers, will pay Jerry Moorehead $50,000.00 for full and complete settlement of the case.
>
> 4. The Moorehead[s'] UM carrier, Tennessee Farmers, will pay Jerry Moorehead $50,000.00 for full and complete settlement of the case.
>
> 5. The Crabtrees, individually, will pay Debra Moorehead $100,000.00 for full and complete settlement of the case. The Crabtrees will have 60 days from the date of this agreement to pay the amount in full.
>
> 6. Upon payment of said amounts, the plaintiffs will, execute a release supplied by the defendants and/or their insurance carrier. Each party shall bear its own attorney[']s fees and expenses.
>
> [7].[2] Tennessee Farmers will pay the clerk's costs. All other costs,

---

[1] The Mooreheads alleged, *inter alia*, that Danny and Jennifer Crabtree owned the vehicle driven by their son and were vicariously liable for their son's actions under the Family Purpose Automobile Doctrine. The subsequent litigation primarily focused on this doctrine and whether Jennifer Crabtree could be held liable, despite allegations that she did not own the vehicle and was not the head of household. The case was set for a two-day trial on June 29 and June 30, 2020, but the parties attended mediation prior to the trial date and reached an agreement. It is that agreement that is at issue in this appeal.

[2] The statements following statement number six were misnumbered in the original. The entire

including discretionary costs, shall be the responsibility of the plaintiff. Tennessee Farmers will pay the mediation fee, and the mediator will invoice counsel.

[8]. If applicable, Counsel for Plaintiffs, by virtue of signature below, will verify Plaintiff[s'] compliance with T.C.A. § 71-5-117(g) and will confirm there are no known TennCare subrogation claims of the State of Tennessee or any entity acting pursuant to T.C.A. § 71-5-117(f) that remain unaddressed in this action, i.e. TennCare Liens.

[9]. Counsel for Plaintiffs, by virtue of signature below, verifies or will verify there are no hospital/medical liens of record which remain unsatisfied, pursuant to T.C.A. § 29-22-101, *et seq*.

[10]. The parties further agree that Plaintiffs shall be responsible for satisfying any and all subrogation interests, hospital and/or medical liens which may exist as a result of any claims asserted in the case, and Plaintiffs shall hold Defendants and their insurance carrier harmless from such claims, including attorney fees and costs.

[11]. If necessary, the parties will enter into a more formal and detailed settlement agreement.

The Agreement was signed by the Mooreheads, the Mooreheads' counsel, the Crabtrees' counsel, and Messrs. Bobo and Nichols.

On September 2, 2020, the Mooreheads filed a motion to enforce the Agreement. In their motion, the Mooreheads alleged that Farmers paid only $50,000 in total UM coverage, which was half of the $100,000 contemplated in the Agreement. The Mooreheads averred that when they informed Mr. Nichols of Farmers' alleged failure to make full payment, he stated that pursuant to the Limit of Liability clause of the UM coverage, Farmers was entitled to a $50,000 credit for payments it made to the Mooreheads in 2018 under the medical payment coverage provision of their insurance policy. The UM Limit of Liability clause provides:

> Our limit of liability for this Uninsured Motorist Coverage shall be reduced by the sum of the limits paid or payable under all liability and/or primary uninsured motorist insurance policies, bonds and securities applicable to the bodily injury or death of the covered person.
>
> Our limit of liability under this coverage to or for a covered person shall be reduced by the amount paid or payable under the Liability and Medical Payments Coverages[3] of this policy or any other automobile insurance policy[.]

---

Agreement is reproduced here.

[3] The Mooreheads' policy provides medical payment coverage of $25,000 per person.

In response, Farmers UM asserted that it had paid the entire $100,000 contemplated in the Agreement. Specifically, Farmers UM argued that, in May 2020, it paid $25,000 to each of the Mooreheads under the Agreement, and it had previously paid them $25,000 each in April 2018 under the medical payment provision of the insurance policy. Thus, Farmers UM maintained that it had satisfied its obligation, under the Agreement, to pay the Mooreheads $100,000.

On September 9, 2020, the trial court conducted a hearing on the Mooreheads' motion to enforce. During the hearing, Mrs. Moorehead testified that she and Mr. Moorehead received $100,000 from the Crabtrees personally and $100,000 from the Crabtrees' insurance coverage, but only $50,000, collectively, from Farmers UM.[4] She also testified that she and Mr. Moorehead received $50,000 (or $25,000 each) from Farmers approximately two years prior, but that those previous payments were never referenced during mediation.

On September 14, 2020, the trial court entered an order denying the Mooreheads' motion, stating:

> The Court finds that the Mediation Agreement is a binding contract, and that Tennessee Farmers UM has, in fact, paid a total of $50,000.00 to each named plaintiff, for a total collective sum of $100,000.00, the limits of the UM policy in question. The Court does not find from the terms of the Mediation Agreement that Tennessee Farmers UM intended to "go beyond" the limits of the policy. . . . The Court finds that Tennessee Farmers UM has, in fact, complied with the terms of the Mediation Agreement, and[,] therefore, the requested relief in said Motion is hereby DENIED.

The Mooreheads appeal.

## II. ISSUES

The Mooreheads raise the following issues for review:

1. Whether the trial court erred in interpreting the settlement amount in the mediation agreement to include previous payments made by Tennessee Farmers to the Mooreheads under the medical payment provision of their policy.

---

[4] The trial court entered an agreed order, dismissing the claims against the Crabtrees personally, as the Crabtrees had paid the Mooreheads the agreed-upon amount. This appeal involves only the provision of the Agreement, under which Farmers UM agreed to pay the Mooreheads $50,000 each.

2. Whether the trial court erred in finding that Attorney Nichols did not bind Tennessee Farmers UM to pay more than the policy limits at mediation.

Appellee, Farmers UM, states the issue in this way:

> Whether the Trial Court erred in ruling that the amount available to the Plaintiffs under their Tennessee Farmers Mutual Insurance Company's uninsured motorist coverage should be reduced by the amounts previously paid to them under the medical payments provisions of the policy.

## III. STANDARD OF REVIEW

This case turns on the interpretation of a mediation agreement. "[S]ettlement agreements are contracts between the parties, and the rules governing the interpretation of contracts apply to settlement agreements." *Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73, 80 (Tenn. 2012). The interpretation of a contract is a question of law; hence, our review is de novo with no presumption of correctness. *Estate of Hunt v. Hunt*, 389 S.W.3d 755, 759 (Tenn. Ct. App. 2012) (citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)).

## IV. ANALYSIS

The trial court denied the Mooreheads' motion to enforce, in part, because of its finding that if the Agreement were read to require Farmers to pay $50,000 to each of the Mooreheads in new money, such payments would result in Farmers paying the Mooreheads in excess of the policy limits. The court held that, "[i]n considering policy limits, . . . the limits of said policy have been exhausted and . . . Attorney Nichols did not bind Tennessee Farmers UM to pay more than the policy limits at mediation."[5] The Mooreheads do not dispute that the payments they request would exceed the policy limits—indeed, counsel for the Mooreheads confirmed this at oral argument; rather, they argue that the policy limits do not apply in light of the Agreement, which makes no reference to the policy or previous payments made thereunder. The Mooreheads assert that the Agreement required Farmers UM to pay them $50,000 each in "new" money. Conversely, Farmers argues that it is entitled to an offset for the $50,000 (i.e., its previous payment of $25,000 to each of the Mooreheads for medical payments).

---

[5] The Moorehead's UM policy provided coverage of $100,000 for each person for bodily injury with a maximum of $300,000 per accident. The Crabtrees' insurance policy with Farmers paid $50,000 to Mr. Moorehead and $50,000 to Mrs. Moorehead. This reduced the amount payable to each person under the Mooreheads' UM policy by $50,000, pursuant to this provision in their policy:

> Our limit of liability under this coverage to or for a covered person shall be reduced by the amount paid or payable under the Liability and Medical Payments Coverages of this policy or any other automobile insurance policy[.]

It is a long-held canon of contract interpretation that when the contractual language of an agreement is clear and unambiguous, the literal meaning controls the outcome of the dispute. *E.g.* ***Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.***, 395 S.W.3d 653, 659 (Tenn. 2013); ***Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.***, 521 S.W.2d 578, 580 (Tenn. 1975); ***Eleogrammenos v. Standard Life Ins. Co.***, 149 S.W.2d 69 (Tenn. 1941). In the recent case of ***Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.***, 566 S.W.3d 671 (Tenn. 2019), the Tennessee Supreme Court examined Tennessee jurisprudence with respect to the interpretation of contracts. The Court stated that, "[T]he cardinal rule upon which all other rules hinge is that courts must interpret contracts so as to ascertain and give effect to the intent of the contracting parties consistent with legal principles." 566 S.W.3d at 688. The Court further emphasized that the "sole object" of the rules of contract construction is "'to do justice between the parties, by enforcing a performance of their agreement according to the sense in which they mutually understood it **at the time it was made**.'" *Id.* (quoting ***McNairy v. Thompson***, 33 Tenn. 141, 149 (1853)) (other citations omitted) (emphasis added). To this end, Tennessee courts "demonstrate a definite focus on the written words in the parties' contract, but they also consider evidence related to the situation of the parties and the circumstances of the transaction in interpreting those words." *Id.* at 692. Nonetheless, the Court noted that there is a "strong strain of textualism in Tennessee caselaw [that] demonstrates [a] resolve to keep the written words as the lodestar of contract interpretation." *Id.* at 694 (collecting cases). The Court concluded that "Tennessee courts 'give primacy to the contract terms, because the words are the most reliable indicator—and the best evidence—of the parties' agreement when relations were harmonious, and where the parties were not jockeying for advantage in a contract dispute.'" *Id.* (quoting Feldman, 21 Tenn. Practice § 8:14).

With this in mind, we return to the disputed language of the Agreement at issue in this appeal, to-wit:

> 2. The Moorehead's UM carrier, Tennessee Farmers, will pay Debra Moorehead $50,000.00 for full and complete settlement of the case.
> . . .
> 4. The Moorehead's UM carrier, Tennessee Farmers, will pay Jerry Moorehead $50,000.00 for full and complete settlement of the case.

At the outset, we reiterate the Tennessee Supreme Court's guidance that, in interpreting contracts, courts must enforce the parties' performances according to the parties' mutual understanding of their respective obligations "**at the time [the contract] was** made." 566 S.W.3d at 688. It is undisputed that, at the time of the mediation, Farmers UM was aware of its previous payments to the Mooreheads under the medical payment provision of their insurance policy. Yet, Mrs. Moorehead testified that there was no mention of these previous payments during the mediation. At oral argument before this Court, Farmers UM's attorney, Mr. Nichols, corroborated Mrs. Mooreheads' statements

when he candidly stated that, "It [i.e., the previous payment] wasn't discussed, at all, by anyone." In the absence of any reference, in the Agreement, to the previous payments or to the insurance policy, this Court cannot infer that the parties intended to incorporate, into their Agreement, either the policy itself or the fact of the previous payments. Nonetheless, Farmers cites our opinion in *Merrimack Mutual Fire Insurance Co. v. Batts*, 59 S.W.3d 142, 148 (Tenn. Ct. App. 2001) ("The insuring agreement defines the outer limits of an insurance company's contractual liability"), for the proposition that the Agreement is limited or defined by the provisions of the Mooreheads' UM policy.[6] Farmers specifically asserts that "[if] the portion of the policy . . . regarding the earlier payment was to be waived, it would have been necessary to include such an agreement in the [Mediation Agreement]." On the contrary, this Court has held that "[a]fter preliminary negotiations and oral conversations are concluded and a contract is reduced to writing that is clear and unambiguous, there is a conclusive presumption that the parties have reduced their entire agreement to writing[.]" *Faithful v. Gardner*, 799 S.W.2d 232, 235 (Tenn. Ct. App. 1990). Therefore, there is a presumption that the Agreement signed by the parties is the entire agreement. Still, Farmers argues that the Mooreheads' motion to enforce the Agreement was nothing more than an attempt to secure a waiver of a provision of their insurance policy. We disagree. The Agreement itself is a contract independent of the insurance policy. Farmers UM was fully aware of the previous payments and the terms of the insurance policy at the time it entered into the Agreement, yet there is no reference, in the Agreement, to either the policy or the payments. In short, this is not a question of waiver of a contractual provision, but rather an issue of two successive contracts, i.e., the insurance policy and the Agreement. Therefore, we look to "[t]he ordinary rule in contractual matters [, which] is that the last agreement as to the same subject matter which is signed by all parties super[s]edes all former agreements . . . ." *Bringhurst v. Tual*, 598 S.W.2d 620, 622 (Tenn. Ct. App. 1980); *Davidson v. Davidson*, 916 S.W.2d 918, 922 (Tenn. Ct. App. 1995); *Magnolia Grp. v. Metro. Dev. & Hous. Agency of Nashville, Davidson Cty.*, 783 S.W.2d 563, 566 (Tenn. Ct. App. 1989). The Mediation Agreement is the last agreement on the same subject matter as the Mooreheads' UM insurance policy and is signed by all parties; therefore, it supersedes the insurance policy.

Turning to the plain language of the Agreement as set out in context above, the parties use the future verb tense, i.e., Farmers "will pay Debra Moorehead $50,000.00," and Farmers "will pay Jerry Moorehead $50,000.00 . . . ." The verb, "will pay," is not ambiguous nor open to more than one interpretation. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006) (noting that words in a contract are ambiguous when they are "susceptible to more than one reasonable interpretation."); *Dick Broad. Co.*, 395 S.W.3d at 659. As this Court noted in *McCollum v. Huffstutter*, in interpreting contracts, we are not only "bound by the plain language of th[e] document[, but also by] the general rules of grammatical construction." No. M2002-00051-COA-R3-CV, 2002 WL

---

[6] "An insurance policy is a contract, and as such, our analysis must be grounded in principles of contract law." *Christenberry v. Tipton*, 160 S.W.3d 487, 492 (Tenn. 2005).

31247077, \*4 (Tenn. Ct. App. Oct. 8, 2002), *perm. app. denied* (Tenn. Feb. 18, 2003). Having employed the simple future tense, the parties' Agreement contemplates a payment that had not yet been made at the time of the Agreement. Furthermore, there is no limiting language concerning any offset for past payments. As such, we interpret the Agreement to obligate Farmers UM to pay each of the Mooreheads $50,000 in "new money."

As a final matter, the Mooreheads ask us to determine "[w]hether the trial court erred in finding that Attorney Nichols did not bind Tennessee Farmers UM to pay more than the policy limits at mediation." In their brief, the Mooreheads make a rather extensive argument that Mr. Nichols, as Farmers' agent, had either the actual or apparent authority to exceed the policy limits, which he did by entering into the Agreement on behalf of Farmers. It appears that the Mooreheads made this argument in anticipation of Farmers UM taking the position that Mr. Nichols exceeded his authority, but this issue was neither raised nor argued in the trial court. Although the trial court's order concludes that Mr. Nichols "did not bind" Farmers UM to pay more than policy limits, the order is silent as to the scope of his *authority* to do so. Furthermore, Farmers UM did not assert, as a defense at the trial level, that Mr. Nichols lacked or exceeded his authority as agent,[7] but instead relied on the argument that the policy language controlled the outcome. "[T]he issues addressed by the appellate courts should be limited to those that have been raised and litigated in the lower courts[.]" ***Baugh v. Novak***, 340 S.W.3d 372, 381 (Tenn. 2011). Thus, the issue of the scope of Mr. Nichols' authority as Farmers' agent is not properly before us, and we express no opinion on that question.

## V. CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court. The case is remanded for entry of judgment in favor of the Mooreheads for the full amount (i.e., $50,000 each) contemplated in the Agreement, and for such further proceedings as may be necessary and are consistent with this opinion. Costs of this appeal are assessed to the Appellee, Tennessee Farmers Mutual Insurance Company, for all of which execution may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE

---

[7] Nor did Farmers UM take this position in its appellate brief. In the fact section of its brief, Farmers states that it "never agreed to pay more tha[n] its policy provided, and no request was ever made that the company do so until after the mediation was concluded[,]" but Farmers did not argue that Mr. Nichols lacked the *authority* to agree to pay more than the Mooreheads' policy provided. At oral argument, Mr. Nichols did state, "I had no authority to agree to anything beyond policy limits." However, "statements of fact made in . . . oral arguments are not evidence and may not be considered by an appellate court unless they are properly made part of the record." ***Threadgill v. Bd. of Prof'l Responsibility of Supreme Court***, 299 S.W.3d 792, 812 (Tenn. 2009), *overruled on other grounds by* ***Lockett v. Bd. of Prof'l Responsibility***, 380 S.W.3d 19 (Tenn. 2012); Tenn. R. App. P. 13(c).